Annie Nell **RATLIFF** and Henry Ratliff,
Appellees,

v.

**COOPER LABORATORIES, INC.,**
Appellant.

**Alice W. NICHOLS,** Appellee,

v.

**STERLING DRUG COMPANY,** Inc., a
corporation, Appellant.

**No. 14788.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 4, 1971.

Decided June 29, 1971.

Julius W. McKay and E. W. Laney,
III, Columbia, S. C. (McKay, McKay,
Black, Sherrill, Walker & Wilkins, and
Turner, Padget, Graham & Laney, Columbia, S. C., on the brief), for appellants.

Henry Hammer, Columbia, S. C., for
appellees.

Before WINTER and CRAVEN, Circuit Judges, and MILLER, District
Judge.

CRAVEN, Circuit Judge:

This is a consolidated interlocutory appeal, 28 U.S.C. § 1292(b), by two drug
manufacturing companies, Cooper Laboratories, Inc. and Sterling Drug Company, Inc., who challenge the jurisdiction
of the District Court of South Carolina
to adjudicate certain claims brought by
nonresidents and arising outside the
state. The district court denied the motions of the defendant drug companies

to set aside the service of summons and to dismiss the complaint. We think the facts presented as a basis for in personam jurisdiction are insufficient "contacts, ties, or relations"[1] to satisfy the due process clause of the Fourteenth Amendment, and therefore reverse.

These are diversity jurisdiction cases with the requisite jurisdictional amount. Both claims stem from alleged injuries suffered from the consumption of drugs manufactured by defendants. The drugs were neither manufactured nor consumed in South Carolina.

Plaintiffs Annie and Henry Ratliff are citizens and residents of Florida. She purchased the allegedly harmful drugs in Florida and apparently consumed them there, but, in any event, did not use them in South Carolina. Defendant Cooper Laboratories, the maker of the drug used by Mrs. Ratliff, is a Delaware corporation with its principal place of business in Mystic, Connecticut. Its activities in South Carolina are limited to solicitation by mail to dealers and wholesalers, and the mailing of promotional literature to approximately 650 doctors on its mailing lists.

Plaintiff Alice W. Nichols is a citizen and resident of Indiana, and it has been stipulated that "the drugs referred to in the Complaint were purchased, consumed and ingested in Indiana and the injuries and damages complained of occurred in Indiana" and that "the treatment and hospitalization referred to in the Complaint occurred in Indiana." Defendant Sterling Drug, a Delaware corporation, maintains its principal place of business in New York where it manufactured the drug taken by plaintiff Nichols. Sterling Drug's activities in South Carolina, however, are more extensive than those of Cooper Laboratories. It has filed application and been given authority to do business in South Carolina and has appointed an agent for service of process. South Carolina Code of Laws

12–23.1 through 12–23.16. Additionally, Sterling maintains five "detail men" who live in South Carolina and promote Sterling's products through personal contacts with doctors and drugstores throughout the state. Although occasionally taking orders themselves, it was stipulated that "their primary responsibility is the promotion of drugs, not the actual sale of them."

Plaintiffs' only interest in South Carolina is in its relatively long statute of limitations (six years), and plaintiffs' only contact with South Carolina is the bringing of these lawsuits for the sole purpose of availing themselves of that statute—the limitation periods having run in all other states having any connection with the claims presented—Florida, Indiana, New York, Connecticut, and Delaware.

Process was served on Cooper Laboratories pursuant to the procedures of South Carolina's long-arm statute, South Carolina Code of Laws 12–23.14, and upon Sterling's agent appointed for service of process in South Carolina under 12–23.13.[2] The sufficiency of service is not questioned here. However, "underlying the question of service of process is the preliminary inquiry into whether the court has the power to summon a defendant before it to adjudicate a claim against him." 4 Wright & Miller, Federal Practice and Procedure 205 (1969).

Whether jurisdiction in the sense of power exists depends upon concepts of "fairness" and "convenience" and not upon mere compliance with procedural requirements of notice, nor even corporate "presence" within the state. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply

1. International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

2. See Rule 4(e) Fed.R.Civ.P.

mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less * * *. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. * * *

*Id.* at 319, 66 S.Ct. at 159.

South Carolina has extended its service of process laws to the outer limits allowed by *International Shoe.* See Shealy v. Challenger Manufacturing Co., 304 F.2d 102, 107 (4th Cir. 1962); Carolina Boat & Plastic Co. v. Glascoat Distributors, Inc., 249 S.C. 49, 152 S.E.2d 352 (1967). Our inquiry is therefore limited to a determination of whether the facts in the instant case fall within those notions of due process,[3] *i.e.*, fairness and convenience, which would make it not unreasonable to require the defendant corporations to litigate far from home. Are the activities of the defendant drug companies extensive enough in South Carolina to warrant in personam jurisdiction when the plaintiffs are nonresidents and the causes of action arose outside the forum and were unconnected with the defendant's activities in South Carolina? The question has been said to be one of *amenability,* Foster, Long-Arm Jurisdiction in Federal Courts, 1969 Wis. L.Rev. 9, 11, and the ultimate process one of balancing. Developments in the Law of State-Court Jurisdiction, 73 Harv.L. Rev. 909, 924 (1960); see generally Wright & Miller, *supra,* at 261–62. Expanding interstate commerce and the "transformation of our national economy over the years" has tended to expand jurisdiction, McGee v. International Life Insurance Co., 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), but there are still limits.

> But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States.

Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958).

---

3. "Despite the rather obvious point that the fifth, rather than the fourteenth, amendment should be the source of due process limitation upon the exercise of federal court powers, it has generally been assumed that the incorporation of state law to confer district court amenability embraces state law as limited by federal restraints on the states themselves. * * *" Foster, Long-Arm Jurisdiction in Federal Courts, 1969 Wis.L. Rev. 9, 38.

"The oft-repeated test is that first stated in Pulson v. American Rolling Mill Co., 170 F.2d 193, 194 (1st Cir. 1948):

"There are two parts to the question whether a foreign corporation can be held subject to suit within a state. The first is a question of state law: has the the state provided for bringing the foreign corporation into its courts under the circumstances of the case presented? There is nothing to compel a state to exercise jurisdiction over a foreign corporation unless it chooses to do so, and the extent to which it so chooses is a matter for the law of the state as made by its legislature. If the state has purported to exercise jurisdiction over the foreign corporation, then the question may arise whether such attempt violates the due process clause or the interstate commerce clause of the federal constitution. U.S.Const. art. 1, § 8, cl. 3; amend. 14. This is a federal question and, of course, the state authorities are not controlling. But it is a question which is not reached for decision until it is found that the State statute is broad enough to assert jurisdiction over the defendant in a particular situation.' "

*Id.* at 38–39, n. 112.

Significant in the instant factual setting is the lack of a "rational nexus" between the forum state and the relevant facts surrounding the claims presented. Curtis Publishing Co. v. Birdsong, 360 F.2d 344, 346 (5th Cir. 1966). See also, Blount v. Peerless Chemicals (P.R.), Inc., 316 F.2d 695 (2d Cir. 1963); Elliott v. Edwards Engineering Corp., 257 F. Supp. 537, 539 (D.Colo.1965). If "plaintiff's injury does not arise out of something done in the forum state, then other contacts between the corpration and the state must be *fairly extensive* before the burden of defending a suit there may be imposed upon it without offending 'traditional notions of fair play and substantial justice.' " F. James, Civil Procedure 640 (1965). (Emphasis added.) See Hanson v. Denckla, *supra,* 357 U.S. at 251, 78 S.Ct. 1228; Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); Volkswagen Interamericana, S. A. v. Rohlsen, 360 F.2d 437 (1st Cir. 1966); von Mehren and Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L.Rev. 1121, 1137–38, 1142–44 (1966).

Here the activities of the defendant corporations in South Carolina, although possibly sufficient to constitute "presence" are nonetheless minimal. Neither maintains an office in South Carolina, and neither warehouses goods there. With the exception of the samples and materials used by Sterling's detail men, neither has any real or personal property in the state. Nor does either maintain a bank account in the state or advertise in directories there (although advertisements do appear in national medical journals which subsequently find their way into the state). The presence of Sterling's detail men in South Carolina and the appointment of an agent for service of process in accordance with South Carolina law does not, we think, tip the scale for plaintiff Nichols. We think the application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight in the present context. Applying for the privilege of doing busi-

ness is one thing, but the actual exercise of that privilege is quite another. See International Shoe Co. v. Washington, *supra,* 326 U.S. at 319, 66 S.Ct. 154. The principles of due process require a firmer foundation than mere compliance with state domestication statutes.

In respect to the remaining activities of both defendants, and in particular the activities of Sterling's detail men, we subscribe to the position taken by the First Circuit in Seymour v. Parke, Davis & Co., 423 F.2d 584 (1st Cir. 1970), a case of remarkable similarity to the one before us. In *Seymour*, a resident of Massachusetts purchased an allegedly injury-producing drug manufactured by Parke, Davis & Company, a Michigan corporation. None of the events giving rise to the claims presented occurred in the forum state, New Hampshire, where the plaintiff admitted she brought suit because of the expiration of the statute of limitations in Massachusetts. The district court dismissed the claim for lack of in personam jurisdiction. Affirming, the court of appeals concluded:

> If the plaintiff has some attachment to the forum, or if the defendant has adopted the state as one of its major places of business, we would have no question of the right of the state to subject the defendant to suit for unconnected causes of action. Nor would we even if the forum were not a major center of defendant's business but were nevertheless a community into whose business life the defendant had significantly entered as determined by the quality, substantiality, continuity, and systematic nature of its activities * * * When, however, defendant's only activities consist of advertising and *employing salesmen to solicit orders,* we think that fairness will not permit a state to assume jurisdiction. 423 F.2d at 587. (Emphasis added.)

■ Since neither defendant here was amenable to in personam jurisdiction in South Carolina, the motions to set aside the service of process and to dismiss the complaint should have been granted.

Because we hold the district court lacked jurisdiction, we do not reach the defendant corporations' second line of defense—that South Carolina's "door-closing" statute (South Carolina Code of Laws 10–214) prevents these nonresident plaintiffs from maintaining suits on causes of action not arising within the state. *Compare* Arrowsmith v. United Press International, 320 F.2d 219 (2d Cir. 1963), *with* Szantay v. Beech Aircraft Corp., 349 F.2d 60 (4th Cir. 1965), which additionally involved a domestic corporate defendant.

Reversed.