Marshall D. CARTER

v.

Joseph R. MASSEY et al.

Joseph FORTE

v.

Joseph R. MASSEY et al.

Civ. A. Nos. M–76–472 and M–76–671.

United States District Court,
D. Maryland.

March 4, 1977.

---

George W. White, Jr., Towson, Md., for plaintiff, Carter.

Robert V. Lazzaro, Baltimore, Md., for plaintiff, Forte.

Donald L. Merriman, Baltimore, Md., for plaintiff, Forte, and third party defendant, Forte.

Howard G. Goldberg, Baltimore, Md., for defendants, Massey and Davis.

Richard H. Lerch, Baltimore, Md., for Peninsula Oil Co.

## MEMORANDUM

JAMES R. MILLER, Jr., District Judge.

These suits involve an accident between an automobile and a tractor-trailer truck near Millsboro, Delaware on or about May 12, 1973. Motions to dismiss have been filed by the defendants Massey and Davis in both cases pursuant to Rule 12(b)(2), F.R.Civ.P. The court has considered certain depositions and answers to interrogatories in connection with these motions which will, therefore, be treated as motions for summary judgment.

## I

### Facts

The collision giving rise to these suits occurred, as previously stated, in Delaware between an automobile occupied by the plaintiffs and a tractor-trailer oil tank truck. The defendant Massey was driving the tractor-trailer. The tractor portion of the vehicle was owned by defendant Davis and the oil tank trailer portion of the vehicle was owned by the defendant Peninsula Oil Company. The cargo of fuel oil in the truck was bound from the Peninsula depot at Seaford, Delaware to a power plant near Millsboro, Delaware.

At the time of the accident, defendant Massey regularly drove trucks for defendant Davis, but it is unclear how often Massey drove trucks into Maryland prior to the accident. Although Massey did haul stone from Pennsylvania to Delmar, Maryland during the time he was employed by Davis, there is confusion as to whether this type of hauling for Davis started before or after the accident. (Massey deposition at 31–34; Davis deposition at 19). In any event, after the accident Massey stopped driving for defendant Davis and began driving for his father, Martin Massey, Jr. Since going to work for his father, defendant Massey has been driving trucks in Maryland, both on an interstate and an intrastate basis, on a frequency of several times per week continuing up to the point when these suits were filed and beyond. (Massey deposition 6, 8, 10–11, 18, 21, 28–30).

At the time of the accident, defendant Davis owned a trucking firm which operated from Seaford, Delaware. During 1972 and in early 1973, he owned and operated five or six tractors which pulled oil tank trailers owned by various oil companies. At that time his business was apparently solely for oil companies, delivering oil entirely within the boundaries of Delaware. (Davis deposition at 7–8, 11–12, 27). At some point in time, there being presently a conflict in the evidence whether it was prior to or after the accident, the business of Davis expanded, and he began hauling approximately 20 loads of stone per week to Delmar, Maryland. (*Id.* at 25). He now pays approximately $1,680 annually to Maryland for the highway use tax on eight trucks presently owned by him. (*Id.* at 26). Davis's trucks have made no deliveries to Maryland in addition to the aforesaid loads of stone except perhaps very insignificant loads of grain to Baltimore. (*Id.* at 27–28).

The complaints alleged that Peninsula Oil Company, Inc., although it has its principal place of business in Delaware, is registered to do business in Maryland and actually does business in Maryland. These allegations have not been contradicted by defendant Peninsula Oil Company.

Both plaintiff Carter, a passenger in the automobile, and plaintiff Forte, its driver, are Maryland residents.

Defendants Massey and Davis were served by registered mail pursuant to Maryland's Long Arm Statute, *Maryland Code Annotated,* "Courts and Judicial Proceedings," § 6–103 (1974).

## II

### The Long Arm Statute

#### A. The requirements of § 6–103(b)(4)

Section 6–103(b)(4) of the Maryland Long Arm Statute provides in pertinent part as follows:

"A court may exercise personal jurisdiction over a person, who directly or by an agent: . . .

"(4) causes tortious injury . . . outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State."

Plaintiffs contend that this section authorizes the exercise of jurisdiction in this case over defendants Massey and Davis.

#### B. The requirements of § 6–103(a)

The Maryland Long Arm Statute, in subsection 6–103(a), imposes a condition that personal jurisdiction based solely on the statute may be asserted only for a cause of action "arising from" one of the six acts enumerated in subsection (b). The initial question to be here resolved is the relationship of subsection (a) to the above quoted provisions of subsection (b)(4). In concrete terms, the question may be asked as follows:

Must the cause of action arise from a "tortious injury [caused] . . . outside of the State by an act or omission outside of the State" provided that the defendant "regularly does or solicits business, engages in any other persistent course of conduct in the State, or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State" or, must the cause of action arise from a "tortious injury [caused] . . . outside of the State by an act or omission outside of the State" and in addition must the enumerated contacts of the defendant with the State be directly connected with the act

or omission giving rise to the tortious injury?"

To state the question is to answer it. The statutory language of § 6–103(b)(4) of the Maryland Long Arm Statute cannot reasonably be read to sustain the interpretation set forth in the latter half of the question stated.

The Maryland Long Arm Statute was modeled after the Uniform Interstate and International Procedures Act (UIIPA).[1] *Malinow v. Eberly*, 322 F.Supp. 594 (D.Md. 1971). Subsection 6–103(a) of the Maryland Long Arm Statute contains substantially the same language as the comparable provision, § 1.03(b), of the UIIPA. Similarly, subsection 6–103(b)(4) of the Maryland statute is substantially identical to § 1.03(a)(4), the comparable provision of the UIIPA except that the Maryland statute allows jurisdiction to be exercised as to a tortious injury *outside* the State whereas the UIIPA language would limit the exercise of jurisdiction to a case of tortious injury *in* the State by an act or omission outside the State. Significantly, the draftsmen of the UIIPA stated, in analyzing the relationship between § 1.03(b) and § 1.03(a)(4):

"It should be noted that the regular solicitation of business or the persistent course of conduct required by section 1.03(a)(4) need have no relationship to the act or failure to act that caused the injury."

13 Uniform Laws Annotated 287 (1975 edition).

As is the case with the UIIPA, neither the regular solicitation of business, nor the persistent course of conduct, nor the substantial revenues required within the State by § 6–103(b)(4) of the Maryland statute need have a relationship to the acts or omissions that caused the tortious injury. Section 6–103(b)(4) ". . . authorizes jurisdiction over tortious causes of action causing injury anywhere by acts committed or omitted anywhere provided that the defendant has a sufficient nexus with Maryland to satisfy the terms of the statute." *Topik v. Catalyst Research Corp.*, 339

---

1. See 13 Uniform Laws Annotated 285 (1975 Master edition).

F.Supp. 1102 at 1106 (D.Md.1972). The intent of the Maryland legislature has been to extend the jurisdiction of Maryland courts to the full extent permitted by Due Process. *See e. g. Krashes v. White,* 275 Md. 549, 558–559, 341 A.2d 798 (1975); *Gilliam v. Moog Industries, Inc.,* 239 Md. 107, 111, 210 A.2d 390 (1965). *See also Aiken v. Lustine Chevrolet, Inc.,* 392 F.Supp. 883, 885 (D.D.C. 1975) (relating to a similar provision in the District of Columbia Long Arm Statute).

## C. *Due Process*

■ Since the Maryland Long Arm Statute is designed to extend the jurisdiction of Maryland courts to the maximum limit allowed by the Due Process clause of the Fourteenth Amendment, *Krashes v. White, supra,* both the reach of the Maryland statute and the constitutional validity of the exercise of jurisdiction pursuant thereto are measured by the same standard. *Krashes v. White, supra; see also Hardy v. Pioneer Parachute Co., Inc.,* 531 F.2d 193, 195 (4th Cir. 1976). The ultimate test of the validity of the exercise of personal jurisdiction over Massey and Davis pursuant to subsection (b)(4) of the Maryland Long Arm Statute is whether the contacts of those defendants with Maryland are such that requiring them to defend a suit here would offend "traditional notions of fair play and substantial justice." *See International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denkla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

■ In determining whether requirements of fairness and substantial justice have been met, the court should consider the following factors:

1. The nature and quality of the defendants' contacts with the forum state;

2. The quantity of defendants' contacts with the forum state;

3. The relationship, if any, of the cause of action to the contacts of the defendants with the forum state; and, to a lesser extent,

4. The legitimacy of the interest of the forum state in providing a forum for the cause of action asserted, and

5. The convenience of the parties.
*Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745 (4th Cir. 1971); *Gkiafis v. Steamship Yiosonas,* 342 F.2d 546, 556–57 (4th Cir. 1965); *Electro-craft Corp. v. Maxwell Electronics Corp.,* 417 F.2d 365, 368 (8th Cir. 1969); *Johnson v. Helicopter and Airplane Services Corp.,* 389 F.Supp. 509, 520 (D.Md. 1975); *Thompson v. Kiekhaefer,* 372 F.Supp. 715 (D.Minn.1973).

■ The more slight the contacts or nexus between the defendants and the forum state, the stronger and more direct must be the relationship between the cause of action and the contacts with the forum state. In *McGee v. International Life Insurance Co.,* 355 U.S. at 223, 78 S.Ct. at 201, it was stated that it is "sufficient for purposes of due process that the suit was based on a [single] contact which had substantial connection with that State." *See also Gkiafis v. Steamship Yiosonas, supra; Thompson v. Ecological Science Corp.,* 421 F.2d 467, 470 (8th Cir. 1970). Conversely, if " 'plaintiff's injury does not arise out of something done in the forum state, then other contacts between the [defendants] and the State must be *fairly extensive* before the burden of defending a suit there may be imposed upon [them] without offending "traditional notions of fair play and substantial justice." ' " F. James, *Civil Procedure* 640 (1965), *quoted with approval in Ratliff v. Cooper Laboratories, Inc., supra,* at 748. *See also Hanson v. Denkla, supra; Perkins v. Benguet Consolidated Mining Co., supra.*

■ An application of the five factors, which generally are balanced and compared by courts in determining the fairness and substantial justice of an exercise of personal jurisdiction over a non-resident, to the facts here produces the following results:

1. The quality of the contacts of the defendants with Maryland at the present

time, and at the time that these suits were instituted, is high in that Davis, both personally and through his agents, and Massey personally travel in Maryland frequently, on a regular basis, in a purposeful way, and in a manner integral to their respective businesses of trucking company operator and truck driver.

2. The quantity of the contacts of both Massey and Davis with Maryland is great. Both travel frequently into Maryland.

3. There is no relationship between the causes of action asserted here and the contacts of the defendants with Maryland except that both relate to the exercise by the defendants of their respective business activities of trucking company owner and operator on the one hand and truck driver on the other hand. Unlike the situation which existed in *Ratliff, supra,* however, the plaintiffs here have an attachment to the forum in that they are residents of Maryland. Furthermore, while the present business of both defendants is relatively small in scope, their activities in Maryland constitute a major portion of their small businesses. As Judge Craven said for the court in *Ratliff:*

> "If the plaintiff has some attachment to the forum, or if the defendant has adopted the State as one of its major places of business, we would have no question of the right of the State to subject the defendant to suit for unconnected causes of action. Nor would we even if the forum were not a major center of defendant's business but were nevertheless a community into whose business life the defendant had significantly entered as determined by the quality, substantiality, continuity, and systematic nature of its activities."

444 F.2d at 748, quoting *Seymour v. Parke, Davis & Co.,* 423 F.2d 584, 587 (1st Cir. 1970).

4. The plaintiffs are residents of the forum state, Maryland. While it is doubtful that the attachment of the plaintiffs to the forum state could itself tip the scales in favor of exercising personal jurisdiction over defendants who have minimal contacts

with the forum state, *see Hanson v. Denkla, supra,* at 253, 78 S.Ct. 1228, the legitimate interest of the forum state in protecting its citizens has a part to play in the balancing process utilized to relate the "traditional notions of fair play and substantial justice" to specific factual contexts. *Ratliff, supra.*

5. The convenience of the parties plays an uncertain and minimal role in the balancing process utilized to determine the amenability of a defendant to the personal jurisdiction of a State. To the extent it is a factor here, the facts of the case appear to establish Maryland as a form which is not significantly inconvenient to the parties. This court sits in Baltimore, Maryland (the residence of the plaintiffs) which is 86 miles distant from Seaford, Delaware (the residence of the defendants and the site of the accident).

The court concludes that the contacts of the defendants with the forum state, under the circumstances, is sufficient to allow the exercise of personal jurisdiction over these defendants by the State of Maryland without offending "traditional notions of fair play and substantial justice."

D. *The Effect of Relative Timing of Defendants' Contacts with Forum State and the Events Leading to the Cause of Action*

■ The novel aspect of the pending motions is the question they raise as to the significance of the fact that the defendants had few, if any, contacts with Maryland until after the occurrence of the accident which gives rise to these suits. While it has been decided that a defendant cannot defeat personal jurisdiction by ceasing business in the forum state, *see Strick Corp. v. Cravens Homalloy (Sheffield) Ltd.,* 352 F.Supp. 844, 847 (E.D.Pa.1972), no decision has been found addressing the question whether a defendant is amenable to personal jurisdiction based on forum contacts made after the cause of action arose.

The rationale of *Hanson v. Denkla, supra* is that the defendant must by some act or acts have "purposefully avail[ed himself] of the privilege of conducting activities within

the forum state, thus invoking the benefits and protections of its laws," 357 U.S. at 253, 78 S.Ct. at 1240, before a state may, without offending traditional notions of fair play and substantial justice, exercise personal jurisdiction over the non-resident defendant. Nothing in *Hanson v. Denkla* suggest that the activities of the defendant in the forum state must have been contemporaneous with or prior to the act or omission which created the cause of action.

As a practical matter the burden of defending a suit in a foreign state would not appear to vary with the *time* that the contacts of the defendant with the forum state occurred so much as with the *nature and quantity* of those contacts. Significant and regular contacts of a defendant with a forum state during the time when the suit is filed and is being conducted would appear to lessen the burden of defending a suit in that state in comparison to the burden of defending in a state where the contacts at one time (when the acts giving rise to the cause of action occurred) were great but where at the time of the filing and prosecution of the suit were nonexistent. This court, therefore, believes that the amenability of the defendants to suit may permissibly be judged on their current contacts with the forum state, eliminating the need to clarify the precise relative timing of the alleged tortious acts and the contacts of the defendants with Maryland relied on here as warranting the exercise of personal jurisdiction.

For the reasons set forth herein, the court will deny the motions under F.R. Civ.P. 12(b)(2).

### III

#### Venue and Process

Venue has been challenged by all defendants pursuant to F.R.Civ.P. 12(b)(3). In a civil action where jurisdiction is based solely on diversity of citizenship, as is the case here, venue is proper where all plaintiffs reside. 28 U.S.C. § 1391. The motions challenging venue will be denied.

The sufficiency of process and of service of process were challenged pursuant to F.R. Civ.P. 12(b)(4) and (5) by defendants Massey and Davis. No specific defects in the process have been alleged by the defendants. Affidavits of compliance have been filed in both cases. This court finds no failure to comply with Maryland Rule of Procedure 107(a)(2). The motions challenging the sufficiency of the process and of service of process will be denied.

An appropriate Order has been entered.