Anthony **ROSSETTI** and Christine Rossetti, His Wife

v.

**ESSELTE–PENDEFLEX CORP.**

Civ. No. K–87–2219.

United States District Court,
D. Maryland.

April 6, 1988.

---

Edward D. Groh, Glen Burnie, Md., for plaintiffs.

Dean P. Gunby, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, Senior District Judge.

Defendant Esselte–Pendeflex Corporation moves to dismiss plaintiffs' complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). For the reasons discussed below, this Court will grant that motion and dismiss plaintiffs' complaint without prejudice.

### I. *Facts*

Plaintiffs Anthony and Christine Rossetti are citizens of Pennsylvania. Defendant Esselte–Pendeflex Corporation is incorporated in New York and has its principal place of business in New York. The amount in controversy is over $10,000. Accordingly, subject matter jurisdiction, based on diversity of citizenship, is present.

On August 17, 1987, plaintiffs instituted this case alleging that on January 18, 1985, plaintiff Anthony Rossetti, a truck driver, while a business invitee at certain of defendant's business premises in Buena Park, California, was "struck about his head, back and shoulders by the overhead door on defendant's premises" and sustained severe injuries. Complaint, ¶ 5. Plaintiff Anthony Rossetti seeks damages for his injuries, contending, *inter alia*, that defendant was negligent with regard to maintenance of the door and that defendant failed to warn plaintiff of the dangerous condition of the door. Plaintiffs together claim a loss of consortium stemming from the husband's injuries.

Defendant has moved to dismiss plaintiffs' complaint for lack of personal jurisdiction and, in support of that motion, defendant has submitted affidavits of several of its corporate officers. According to those affidavits, during the year 1984 and through January 1985 (the month when the accident allegedly occurred), the defendant did not maintain an office, sales personnel, inventory, or a telephone listing in Maryland. Nor did defendant conduct any research or development operations in this state. The affidavits also indicate that, to date, defendant had not possessed any real property or bank accounts in Maryland, has not filed any Maryland income tax returns, has not operated under any Maryland license, and has not qualified as a foreign corporation to do business in Maryland. *See* Ex. A–C, attached to defendant's Memorandum in Support of its Motion to Dismiss.[1]

Defendant's only contacts with Maryland seem to consist of general advertising in trade journals, some of which have circulation in Maryland, and sales to persons in Maryland, predominantly wholesalers and dealers. In 1984 such sales amounted to $3.65 million, or 1.70% of defendant's total 1984 sales. In January 1985, such sales were approximately $411,000, or 1.76% of defendant's sales for that month. *See* Ex. A.

Plaintiffs apparently agree that the alleged tort giving rise to this suit bears no relation to defendant's contacts within Maryland. *See* Plaintiffs' Memorandum in Opposition, at pp. 3–6. Plaintiffs do not dispute the accuracy of the facts stated in defendant's affidavits. Nor have plaintiffs submitted any affidavits of their own. Indeed, plaintiffs candidly admit that the only reason they bring this suit in Maryland is to take advantage of Maryland's statute of limitations because the one-year statute of limitations in California has expired. *See id.* at pp. 7, 10–11. Maryland applies its

---

1. The facts stated in Exhibit A appear to be stated as of the time the accident occurred. The facts stated in Exhibits B and C apparently re-late to conditions as of the dates on which the affidavits were executed.

own statute of limitations to tort actions brought in this forum, even when the tort has occurred outside the forum. *See Doughty v. Prettyman,* 219 Md. 83, 88, 148 A.2d 438 (1958).[2] Plaintiffs contend that the sales and advertising activities of defendant in Maryland are sufficient to make defendant amenable to this suit.

## II. *Discussion*

Plaintiffs must satisfy a two-part test in order to establish personal jurisdiction over defendant in this diversity action. First, plaintiffs must establish statutory authority to assert personal jurisdiction in this case pursuant to Maryland's long-arm statute. If that first prong of the test is met, then plaintiffs must show that exercise of jurisdiction by this Court is consonant with federal constitutional standards of due process. *Blue Ridge Bank v. Veribanc, Inc.,* 755 F.2d 371, 373 (4th Cir.1985).

■ The relevant section of the Maryland long-arm statute provides:

(b) *In general*—A court may exercise personal jurisdiction over a person, who directly or by an agent:

. . . .

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

. . . .

Md.Cts. & Jud.Proc.Code Ann. § 6–103(b)(4). The scope of that section of Maryland's long-arm statute is coextensive with the limits imposed by the due process clause of the Fourteenth Amendment. *Mohamed v. Michael,* 279 Md. 653, 657, 370 A.2d 551 (1977); *Geelhoed v. Jensen,* 277

Md. 220, 225–27, 352 A.2d 818 (1976). Plaintiffs cannot satisfy those dual standards because defendant's contacts with Maryland are not "such that [it] should reasonably anticipate being haled into court" here. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ When jurisdiction is asserted over a claim which does *not* arise out of a defendant's contacts with the forum state, the defendant's contacts with that forum must be " 'fairly extensive before the burden of defending a suit there may be imposed upon it without offending "traditional notions of fair play and substantial justice." ' " *Wolf v. Richmond County Hospital Authority,* 745 F.2d 904, 909 (4th Cir.1984), (Chapman, J.) (quoting *Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745, 748 (4th Cir.1971)). In assessing the quality of defendant's contacts in such cases, a more stringent standard must be applied than in cases where the plaintiff's cause of action arises directly out of defendant's contacts with the forum state. *Id.; see also First American First, Inc. v. National Ass'n of Bank Women,* 802 F.2d 1511, 1516 (4th Cir.1986) (Phillips, J.) (discussing reasons for different standards).[3]

In the case at bar, defendant's contacts with Maryland are simply not extensive enough to justify subjecting it to suit here when plaintiffs are not citizens of Maryland, their claim did not arise in this state, and when Maryland itself seemingly has little or no interest in providing a forum for this suit. *See World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564. In *Ratliff v. Cooper Laboratories, Inc., supra,* the plaintiffs were citizens of Florida and Indiana. Defendants were two drug companies, one a Delaware corporation with its principal place of business in Connecticut and the other a Delaware corporation with

---

**2.** Plaintiffs do not explain why they did not bring their suit in New York or Pennsylvania, which, because those states are the domiciles of defendant and plaintiffs respectively, arguably represent other possible forums for this action. Perhaps there are limitations bars which defendant could assert in those forums.

**3.** A state "has a greater and more legitimate interest in providing a forum for claims based upon conduct causing harm within its borders. . . ." *First American,* 802 F.2d at 1516. Also, a foreign defendant "should more reasonably expect to be haled into a[nother] . . . state's court when his purposefully targeted conduct has caused harm within that state's borders. . . ." *Id.*

its principal place of business in New York. Plaintiffs alleged that they were injured by drugs the defendants had manufactured. Because the statute of limitations had run in all states having any connection with plaintiffs' claims, plaintiffs brought their action in the United States District Court for the District of South Carolina. As in the case at bar, plaintiffs' *only* interest in South Carolina was in that state's six-year statute of limitations. *Ratliff,* 444 F.2d at 746. Although defendant corporations advertised in and solicited business in South Carolina, Judge Craven held that defendants' contacts with South Carolina were not extensive enough to satisfy the requirements of due process:

> Here the activities of the defendant corporations in South Carolina, although possibly sufficient to constitute "presence" are nonetheless minimal. Neither maintains an office in South Carolina, and neither warehouses goods there. With the exception of the samples and materials used by [one defendant's] detail men, neither has any real or personal property in the state. Nor does either maintain a bank account in the state or advertise in directories there (although advertisements do appear in national medical journals which subsequently find their way into the state). The presence of [one defendant's] detail men in South Carolina and the appointment of an agent for service of process in accordance with South Carolina law does not, we think, tip the scale for plaintiff Nichols. We think the application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight in the present context.... The principles of due process require a firmer foundation than mere compliance with state domestication statutes.

*Id.* at 748.[4]

In the instant case, the defendant has far less contacts in terms of variety and quali-

ty than did either of the defendant corporations in *Ratliff.* Furthermore, unlike the situation in *Ratliff,* the tort alleged in this case has no relation to the sale of any of defendant's products directly or indirectly to any Marylander.[5] Even though defendant herein does several millions of dollars of business in Maryland annually, those sales equal only 1.7% of its total yearly sales. Thus, Maryland can hardly be said to be a "major center of defendant's business." *See Ratliff,* 444 F.2d at 748 (quoting *Seymour v. Parke, Davis & Co.,* 423 F.2d 584, 587 (1st Cir.1970)). Nor from the uncontroverted facts does Maryland appear to be a " 'community into whose business life the defendant has significantly entered.' " *See id.* If, under those circumstances, in the absence of any " 'rational nexus' " with this forum, *see id.* (quoting *Curtis Publishing Co. v. Birdsong,* 360 F.2d 344, 346 (5th Cir.1966)), Esselte–Pendeflex's sales record of themselves provided a sufficient due process basis for the reach of long-arm jurisdiction, there would be little substance left in the due process requirement. *Cf. Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 418, 104 S.Ct. 1868, 1874, 80 L.Ed.2d 404 (1984); *Asahi Metal Industry Co., Ltd. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 1032–33, 94 L.Ed.2d 92 (1987). Under the circumstances, plaintiffs' complaint will be dismissed without prejudice for want of personal jurisdiction and judgment will be entered for defendant.

---

**4.** In *Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745, 747 (4th Cir.1971), Judge Craven noted:

> South Carolina has extended its service of process laws to the outer limits allowed by *International Shoe [Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1965) ].

South Carolina's long-arm statute is similar to Maryland's in that regard. *See supra* at p. 534.

**5.** In *Ratliff,* the defendants were drug companies. The tort alleged was harm caused by defective drugs the defendants had manufactured.