REYNOLDS AND REYNOLDS HOLD-
INGS, INC., and The Reynolds and
Reynolds Company, Plaintiffs,

v.

DATA SUPPLIES, INC., Defendant.

No. 2:03CV763.

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 5, 2004.

Adam C. Paul, Esquire, Kirkpatrick & Lockhart, LLP, Washington, DC, James L. Chapman, IV, Esquire, Crenshaw, Ware & Martin, Norfolk, Counsel for Plaintiffs.

Conrad M. Shumadine, Esquire, Willcox & Savage, P.C., Norfolk, Amy C. Martin, Esquire, Bowen, Riley, Warnock & Jacobson, PLC, Nashville, TN, Counsel for Defendant.

## OPINION AND DISMISSAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on three motions. Defendant Data Supplies, Inc. ("DSI") has filed a motion to dismiss for lack of personal jurisdiction, and, in the alternative, a motion to transfer venue to the United States District Court for the Middle District of Tennessee. Plaintiffs Reynolds and Reynolds Holdings, Inc., and the Reynolds and Reynolds Company ("the Reynolds Companies") have filed a motion seeking limited discovery on the issue of personal jurisdiction. For the reasons stated below, the court **GRANTS** DSI's motion to dismiss for lack of personal jurisdiction and **DENIES** the Reynolds Companies' motion for limited discovery. Because DSI filed its motion to transfer in the alternative and the Reynolds Companies oppose transfer to the Middle District of Tennessee, the motion to transfer is **MOOT**.

### I. Procedural History

On November 4, 2003, the Reynolds Companies filed a seventeen-count complaint in the above-captioned matter in the Eastern District of Virginia, alleging, *inter alia*, patent, trademark, and copyright infringement causes of action under federal and state law. At issue in the patent infringement claims are United States Design Patent No. D342,967 ("the '967 patent") and United States Patent No. 5,779,543 ("the '543 patent"). Both patents cover the design of business forms. The '967 patent protects a particular arrangement of boxes and lines on a piece of paper. The '543 patent protects the design and construction of a multi-layer business form. These patents are utilized in the Reynolds Companies' manufacture of preprinted forms used by car dealerships and are sold by the Reynolds Companies under the registered trademarks SOLD PACK, TRADE PACK, LAW, and a stylized version of LAW. In addition, the Reynolds Companies have registered with the United States Copyright Office a multi-page consumer credit sale contract entitled "Simple Interest Motor Vehicle Contract and Security Agreement, Form No. 553–NC (REV.10/98)" (hereinafter referred to as the "Reynolds Motor Vehicle Contract"). The design of the Reynolds Motor Vehicle Contract incorporates the '967 patent.

The Reynolds Companies allege that DSI has violated their rights under the patent, copyright, and trademark laws by "advertising and selling preprinted business forms, including through the Internet, within this judicial district and in interstate commerce under the marks SOLD PACKET, TRADE PACKET, and LAW." (Compl.¶ 13.) In particular, the Reynolds Companies allege that DSI's own "Simple Interest Motor Vehicle Contract and Security Agreement, Form No. 553–NC (REV.10/98)"[1] (hereinafter referred to as the "DSI Motor Vehicle Contract") is available on DSI's website and violates the Reynolds Companies' copyrighted work and the '967 patent.

---

1. According to DSI, the "NC" designation indicates that the form was written specifically to satisfy the requirements of North Carolina's automobile sales laws. (Def's Reply Br., at 2.)

Prior to the filing of the above-captioned action, the Reynolds Companies were named defendants in a pending action filed in the Middle District of Tennessee on October 8, 2003, by Performance Business Forms, Incorporated ("PBF"). DSI is one of PBF's distributors. In the Tennessee action, PBF seeks a declaration that preprinted forms manufactured by the Reynolds Companies are not subject to copyright protection. In addition, PBF's complaint alleges causes of action under the Sherman and Clayton Acts,[2] as well as under Tennessee state law. In response to PBF's complaint, the Reynolds Companies filed an answer and a two-count counterclaim, alleging copyright infringement and patent infringement of the '543 patent.

On December 22, 2003, DSI filed a motion to dismiss for lack of personal jurisdiction, and, in the alternative, a motion to transfer venue to the United States District Court for the Middle District of Tennessee, essentially on the ground that the case between PBF and the Reynolds Companies is pending there. Attached to DSI's memorandum in support of these motions was an affidavit by John Salluard ("Salluard"), Chief Financial Officer of DSI. Salluard's affidavit states that (1) DSI has no offices, employees, or sales persons in Virginia; (2) DSI owns no property in Virginia; (3) DSI does not advertise in Virginia; (4) DSI does not contract with any manufacturer or distributor in Virginia; (5) over the last two years, a DSI salesman located in Tennessee has sold $7,152 worth of business forms to two dealerships in Western Virginia, one in Bristol and one in Gate City; (6) over the last two years, DSI's total sales in Virginia constituted approximately 0.4% of its total gross sales; (7) DSI maintains a website through which customers can order certain products, but they cannot order any of the forms at issue in this dispute over the Internet; and (8) DSI has not sold any of the business forms at issue in this dispute to anyone in Virginia.

On January 5, 2004, the Reynolds Companies filed a memorandum in opposition to DSI's motions, and a motion for limited discovery on the issue of personal jurisdiction. Attached to the Reynolds Companies' memorandum was a Dun and Bradstreet report showing that DSI's gross sales for 2002 were approximately $58 million. Also attached to the memorandum in opposition was the declaration of David Butler ("Butler"), a forms sales representative for the Reynolds Companies. Butler's declaration states that, while at a car dealership in North Carolina, Butler witnessed an employee of the dealership access the DSI website and display and print a webpage containing an image of the DSI Motor Vehicle Contract. Attached to the declaration is a printout of the page Butler viewed. It shows an image of what appears to be the front page of the DSI Motor Vehicle Contract. It does not appear that images of the subsequent pages of the form are accessible from the site, and it is clear that the form cannot be purchased directly. Underneath the image of the first page, a DSI representative's name and contact information are listed. On January 8, 2004, DSI filed its reply memorandum, in which it also responded to the Reynolds Companies' motion for limited discovery. The time for the Reynolds Companies to file a reply to DSI's response to the motion for limited discovery has lapsed. The motions are ripe for review.

---

**2.** Sherman Anti–Trust Act, 15 U.S.C. § 1, *et seq* (1997); Clayton Act, 15 U.S.C. §§ 12–27, 44 (1997).

## II. Standard of Review

In patent-related cases filed in the Eastern District of Virginia, Federal Circuit law governs substantive issues, and the law of the Fourth Circuit applies to procedural matters that are not unique to patent law. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed.Cir.1994). When a defendant challenges the court's personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the jurisdictional question is resolved by the judge, and the burden is on the plaintiff to prove that the court may properly exercise jurisdiction over the defendant by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). If necessary, the court may resolve disputed factual issues regarding personal jurisdiction at trial or at a separate evidentiary hearing. *Id.* If the court determines not to grant a separate evidentiary hearing, the court may decide the jurisdictional question on the basis of the pleadings, motion papers, and supporting legal memoranda. *Id.* If it does so, however, the plaintiff need only make a "prima facie" showing of jurisdiction, and "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.*

## III. Analysis

### A. Personal Jurisdiction

Federal Circuit law governs the substantive issue of whether the court may constitutionally exercise personal jurisdiction over a particular defendant in patent and patent-related cases. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1348 (Fed. Cir.2002); *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F.Supp.2d 689, 694 n. 5 (E.D.Va.2000). Before the court can exercise personal jurisdiction over a defendant in a federal question case, it must determine (1) whether an applicable state statute potentially confers jurisdiction by authorizing service of process on the defendant, and (2) whether the exercise of jurisdiction would satisfy the requirements of the due process clause of the Fifth Amendment. *Deprenyl*, 297 F.3d at 1350–51. Although it was developed in the context of the Fourteenth Amendment, the standard articulated by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny is applicable to the due process inquiry. *Id. International Shoe* and subsequent cases have developed a two-prong test for evaluating the constitutionality of exercising personal jurisdiction over a corporate defendant who is not a resident of the forum state. First, the defendant must have sufficient "minimum contacts" with the forum. *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154. Second, maintenance of the suit against the defendant must not offend "traditional notions of fair play and substantial justice." *Id.* Under the "minimum contacts" test, a defendant may be subject to either specific jurisdiction or general jurisdiction. The court can exercise specific jurisdiction over the defendant where the cause of action "arises out of" or "relates to" defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). A defendant's contacts with the forum must be significantly more extensive before the court can exercise general jurisdiction over it as to causes of action not arising out of or related to the defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

Whether general or specific jurisdiction is alleged, before personal jurisdic-

tion can be exercised over a defendant, the court must determine that an applicable state statute potentially confers jurisdiction over the defendant by authorizing service of process. See *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1372–73 (Fed.Cir.2000) (analyzing whether jurisdiction was authorized by Ohio law in case finding general jurisdiction over defendant). Virginia Code § 8.01–328.1(A)(1) provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's: Transacting any business in the Commonwealth." Despite the statutory language indicating that the cause of action must "arise from" the transaction of business, Virginia courts have interpreted § 8.01–328.1(A)(1) to extend to the limits of due process. See *Danville Plywood Corp. v. Plain & Fancy Kitchens*, 218 Va. 533, 534–35, 238 S.E.2d 800 (1977) ("The purpose of our 'long arm statute' is to assert jurisdiction, to the extent permissible under the Due Process Clause of the Constitution of the United States, over nonresidents who engage in some purposeful activity in Virginia."). Therefore, the court must undertake only the constitutional due process analysis in this case.

### 1. General Jurisdiction

The Reynolds Companies first contend that this court can exercise general personal jurisdiction over DSI solely on the basis that DSI has registered to conduct business in the Commonwealth and has appointed an agent for service of process in Virginia, pursuant to Virginia Code § 13.1–763. In the alternative, the Reynolds Companies contend that general jurisdiction is warranted based on the totality of DSI's contacts with Virginia, which include: (1) its business registration and appointment of an agent for service of process here; (2) its interactive website, which is accessible to people in Virginia;

and (3) its continuing sales to two car dealerships in Virginia.

■ Sufficient minimum contacts for the constitutional exercise of general personal jurisdiction exist where a nonresident corporation has substantial contacts with the forum state that are "continuous and systematic." *Helicopteros*, 466 U.S. at 416, 104 S.Ct. 1868; *LSI Indus.*, 232 F.3d at 1375. Neither the Supreme Court nor the Federal Circuit has established any specific test for analyzing whether a defendant's activities within a state are "continuous and systematic." *LSI Indus.*, 232 F.3d at 1375. "Instead, a court must look at the facts of each case to make such a determination." *Id.* However, it is clear from the relative scarcity of cases permitting the assertion of general personal jurisdiction over a nonresident corporation that the standard for imposing general jurisdiction is high. Since its decision in *International Shoe*, the Supreme Court has decided only one case in which it found that the assertion of general jurisdiction over a non-resident corporation would not violate constitutional due process requirements. See *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448, 72 S.Ct. 413, 96 L.Ed. 485 (1952) (holding that an assertion of general jurisdiction would not violate due process where, due to World War II, the president of a corporation formed under the laws of the Philippines relocated all of the company's business operations to Ohio). In *LSI Industries*, the only Federal Circuit decision the Reynolds Companies have brought to the court's attention finding that an exercise of general jurisdiction would not violate due process, the nonresident company made millions of dollars worth of sales in Ohio and employed several distributors in the state. 232 F.3d at 1375.

■ Though the Federal Circuit has not addressed the issue, a few federal

courts have found general jurisdiction to exist solely on the basis of compliance with a state's registration statute and appointing an agent for service of process within the state. *See, e.g., Cont'l Cas. Co. v. Am. Home Assurance Co.,* 61 F.Supp.2d 128, 129–30 (D.Del.1999); *Bane v. Netlink, Inc.,* 925 F.2d 637, 640–41 (3d Cir.1991); *Wheeling Corrugating Co. v. Universal Constr. Co.,* 571 F.Supp. 487, 488 (N.D.Ga. 1983). Others have found that complying with the registration statutes and appointing an agent for service of process do not amount to consent to general personal jurisdiction. *See, e.g., Leonard v. USA Petroleum Corp.,* 829 F.Supp. 882, 889 (S.D.Tex.1993); *Wenche Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179, 182 (5th Cir.1992); *Ratliff v. Cooper Labs., Inc.,* 444 F.2d 745, 748 (4th Cir.1971).

The court adopts the latter view for a number of reasons. First, the court finds the reasoning of the cases holding that a company does not consent to jurisdiction by registering with the state and appointing an agent for service of process more consistent with the due process standard set forth in *International Shoe* and its progeny than the cases implying consent. A nonresident corporation consents to jurisdiction in a state's courts by actually doing business in that state, not simply by fulfilling a state-law requirement that it register and appoint an agent for service of process so that it potentially could do business there. It is only when the nonresident corporation transacts business in the forum state that it avails itself of the protections of that state's laws and, in return, consents to jurisdiction in that state's courts as to the business it conducted. *See Leonard,* 829 F.Supp. at 889 ("When a foreign corporation does business in Texas, it benefits from and is protected by Texas laws; it enters into a 'bargain' with the state."). Moreover, before general personal jurisdiction can be exercised, a nonresident corporation's contacts with the forum state must be "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *International Shoe,* 326 U.S. at 318, 66 S.Ct. 154. Merely performing the administrative task of registering a company with the State Corporation Commission and appointing an agent for service of process within the state are not substantial enough contacts to justify subjecting a company to general jurisdiction. *Ratliff,* 444 F.2d at 748.

Second, the Fourth Circuit has held that appointing an agent for service of process does not *per se* constitute consent to general jurisdiction. *Ratliff,* 444 F.2d at 748. In the absence of the Federal Circuit holding to the contrary, it makes no sense to find that a registered company is subject to "general" jurisdiction for purposes of patent infringement actions against it in this court, but not subject to "general" jurisdiction as to actions arising under other federal and state laws.

Finally, a finding of general personal jurisdiction on the basis of registration and appointment of an agent alone is extremely conducive to forum shopping because many companies have registered to do business and appointed an agent for service of process in numerous states. Both the Federal Circuit and the Eastern District of Virginia have a particular interest in preventing forum shopping. *See Beverly Hills,* 21 F.3d at 1565 n. 13 ("[A]n important role of the Federal Circuit is to eliminate forum shopping on either substantive or procedural grounds."); *see also Cognitronics,* 83 F.Supp.2d at 699 ("This Court cannot stand as a willing repository for cases which have no real nexus to this district. The 'rocket docket' certainly attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expe-

ditious manner."). Therefore, the court finds that general jurisdiction over a non-resident corporation cannot be based solely on compliance with the Virginia registration statute and appointment of an agent for service of process.

■ DSI's additional contacts with Virginia, even when viewed in conjunction with its registration and appointment of an agent for service of process in the Commonwealth, do not rise to a level of "systematic and continuous" contacts sufficient to impose general jurisdiction under the due process clause of the Fifth Amendment. Only 0.4% of DSI's sales are made in Virginia, and it has a continuing relationship with only two dealerships with which it has transacted only $7,152 worth of business over the last two years.[3] These are not contacts the nature of which can justify subjecting DSI to the jurisdiction of Virginia courts for causes of action unrelated to its contacts with Virginia. *International Shoe*, 326 U.S. at 318, 66 S.Ct. 154.[4]

## 2. Specific Jurisdiction

■ In the alternative, the Reynolds Companies argue that the court can exercise specific personal jurisdiction over DSI. The Reynolds Companies' argument for subjecting DSI to specific jurisdiction is based: (1) on DSI's interactive website, on which the Reynolds Companies claim the DSI Motor Vehicle Contract is offered for sale; and (2) on DSI's relationship with the two car dealerships in Virginia, through which, the Reynolds Companies argue, infringing products could be ordered at any time. Importantly, the Reynolds Companies do not allege that DSI sold any infringing products in Virginia via DSI's website or otherwise. More-over, the Reynolds Companies do not allege that DSI specifically marketed any of its allegedly infringing products to individuals or businesses in Virginia, via the Internet or otherwise.

■ Specific jurisdiction comports with due process if: (1) the defendant has undertaken some activity in which it has purposefully availed itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its law, (2) the claim arises out of the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *See 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1378 (Fed.Cir.1998).

This court does not have specific personal jurisdiction over DSI in this lawsuit because none of the Reynolds Companies' claims arise out of DSI's forum-related activities. The Reynolds Companies first argue that this court can exercise specific jurisdiction on the basis of DSI's website. Viewing the pleadings and evidence in the light most favorable to the Reynolds Companies and drawing all reasonable inferences in their favor, however, it is clear from the Salluard affidavit and the Butler declaration that, while an image of the first page of the DSI Motor Vehicle Contract and information enabling a potential consumer to contact a DSI sales representative is available on the DSI website, a customer visiting DSI's website cannot actually purchase the allegedly infringing product over the Internet. Therefore, the issue is whether specific personal jurisdiction can be exercised over the owner of a website which sells products unrelated to the cause of action and which advertises allegedly infringing products.

---

**3.** It should also be noted that the two dealerships, one in Bristol, Virginia, and one in Gate City, Virginia, are located in the Western District of Virginia, and not anywhere even near the boundaries of the Eastern District of Virginia.

**4.** *See supra* note 3.

. The Federal Circuit has not yet applied the minimum contacts test to the Internet. Most courts that have applied the framework of *International Shoe* to websites have adopted the "sliding scale" approach usually associated with *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997). *See Alitalia–Linee Aeree Italiane, S.p.A. v. Casinoalitalia.com*, 128 F.Supp.2d 340, 349 (E.D.Va. 2001) (citing cases). Under *Zippo*, there are two poles of Internet activity. At one end, there are websites that clearly conduct business over the Internet and have actually had extensive business contacts with entities in the forum state. *Alitalia– Linee*, 128 F.Supp.2d at 349. Personal jurisdiction in the forum state's courts is clearly appropriate over the owners of such sites. *Id.* At the other end of the continuum of relevant jurisdictional contacts are websites that merely post general information or advertising. *Id.* Exercising personal jurisdiction over the owners of such "passive" sites would violate constitutional due process. *Id.* Between the two poles, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange that occurs on the Web site." *Id.* (*citing Zippo*, 952 F.Supp. at 1124). This case falls between the two poles. Customers can purchase products over DSI's website and, drawing all inferences in favor of the Reynolds Companies, the court presumes that some of DSI's sales in Virginia are made directly from the Internet. However, none of the allegedly infringing products are available for purchase on the website. The commercial transactions made via DSI's website are not related to the Reynolds Companies' claims. Therefore, the cause of action does not "arise out of" DSI's website and the court cannot prop-

erly exercise specific personal jurisdiction over DSI on this basis.

The Reynolds Companies further contend that the existence of a website accessible to individuals using computers located in Virginia constitutes an "offer to sell" an infringing product in Virginia within the meaning of 35 U.S.C. § 271(a) as interpreted by the Federal Circuit.[5] Though it is certainly true that no infringing product need actually be sold in the forum state in order for federal courts there to have specific jurisdiction, in the cases where jurisdiction was based on an offer to sell allegedly infringing products in the forum state, the defendants have directly targeted potential customers in the forum state. *See e.g., Cognitronics*, 83 F.Supp.2d at 694–95 (exhibiting allegedly infringing products at a trade show in California and entering into an agreement to loan and license the allegedly infringing product to a California company constituted an "offer to sell" in California); *3D Sys.*, 160 F.3d at 1379 (sending price quotation letters targeting California companies who would be interested in purchasing defendant's allegedly infringing products constituted an "offer to sell"). Where the "offer" is merely an advertisement existing in cyberspace, is not purposefully directed at any residents of the forum, and that offer has not resulted directly or indirectly in any purchases in the forum, it cannot be said that a plaintiff's cause of action "arises out of" an offer to sell in the forum state.

 Finally, the Reynolds Companies argue that, because DSI has a business relationship with two car dealerships in Virginia, and because those car dealerships *could* order from DSI the allegedly infringing products, DSI has placed the allegedly infringing product into the stream

---

5. In relevant part, 35 U.S.C. § 271(a) provides: "[e]xcept as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells within the United States ... any patented invention during the term of the patent therefor, infringes the patent."

of commerce with the expectation that they will be purchased by consumers in Virginia. As is clear from this description of the Reynolds Companies' argument, this connection between the allegedly infringing DSI Motor Vehicle Contract and the Commonwealth of Virginia is entirely hypothetical. The Reynolds Companies cite *Beverly Hills* for the proposition that, under the "stream of commerce" theory, specific jurisdiction may be exercised if the nonresident corporation delivers its products into the stream of commerce "with the expectation that they will be purchased by consumers in such state." (Pl. Mem. in Opposition to Def.'s Motion to Dismiss, at 6.) The Reynolds Companies apparently fail to appreciate that the stream of commerce theory does not supply an independent basis for the exercise of specific jurisdiction, but rather is a means of overcoming the requirement that a defendant have "fair warning" that a particular activity may subject it to jurisdiction in the forum. A prerequisite to the application of the stream of commerce theory is that defendant's product actually be sold, directly or indirectly, in the forum state. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ("[I]f the sale of a product of a manufacturer or distributor [in the forum state] ... is not simply an isolated occurrence, but arises from the efforts of [defendant] to serve, directly or indirectly, the market for its product ..., it is not unreasonable to subject it to suit."). Even viewing all allegations in a favorable light and making all reasonable inferences in favor of jurisdiction, it would be unreasonable based on these facts to find that DSI "makes, uses, offers to sell, or sells" infringing materials within the Commonwealth of Virginia. Therefore, the due process clause of the Fifth Amendment will not permit this court to exercise specific jurisdiction over DSI on this basis.

## B. *Motion for Discovery*

Simultaneous to the filing of its memorandum in opposition to DSI's motion to dismiss, the Reynolds Companies filed a motion for limited discovery on the issue of personal jurisdiction. District courts have broad discretion in their resolution of discovery problems. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 402 (4th Cir.2003). The court does not abuse its discretion to deny jurisdictional discovery when the plaintiff raises only "bare allegations" to dispute defendant's affidavits denying jurisdictional acts or contacts. *McLaughlin v. McPhail,* 707 F.2d 800, 807 (4th Cir.1983); *see Rich v. KIS Cal., Inc.,* 121 F.R.D. 254, 259 (M.D.N.C.1988) ("[T]he court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition.").

In its entirety, the Reynolds Companies' argument in support of the motion for limited discovery is that

> to the extent there is any question as to whether DSI's contacts with Virginia, through DSI's interactive website or otherwise, are sufficient to support a finding of personal jurisdiction, Reynolds requests that the Court allow it to take at least limited discovery of DSI on the issue of its transactions with Virginia, including transactions via DSI's interactive website.

(Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss, at 10.) In the face of Salluard's affidavit that DSI does not have any contacts with Virginia relevant to the Reynolds Companies' cause of action, the Reynolds Companies ask the court to authorize a "fishing expedition" in hopes that they can turn up some contact that would permit this court to exercise jurisdiction. The Reynolds Companies' bare allegation in the complaint that DSI advertised and sold

infringing preprinted business forms "including in this judicial district," has been directly refuted by the Salluard declaration and has not been successfully pursued by the Reynolds Companies in subsequent motion papers and affidavits.[6] The Reynolds Companies have not tendered with any specificity an allegation that DSI might have sold a product to a resident of Virginia, that DSI advertised to Virginians, or that DSI engaged in any other act that would be relevant to the constitutional personal jurisdiction analysis. Therefore, the court will not exercise its discretion to grant the Reynolds Companies limited discovery on the issue of personal jurisdiction.

### IV. Conclusion

For the reasons set forth above, defendant DSI's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is **GRANTED.** Plaintiffs' motion for limited discovery on the issue of personal jurisdiction is **DENIED.** Defendant's motion to transfer is **MOOT.** The Clerk is **DIRECTED** to send a copy of this Opinion and Dismissal Order to counsel for all parties.

**IT IS SO ORDERED.**

---

**6.** Butler's declaration and the accompanying printout prove only that an image of the first page of the DSI Motor Vehicle Contract is displayed on its website for advertising purposes. The image does not appear to be printable for use, and the webpage indicates that the form cannot be purchased directly from the Internet. (Pl. Mem. in Opp. to Def.'s Mot. to Dismiss, at Ex. A.)