PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ROSENRUIST-GESTAO E SERVICOS
LDA, formerly known as
Rosenruist-Gestao E Servicos
Sociedade Unipessoal LDA,
               *Plaintiff-Appellee,*

        v.

VIRGIN ENTERPRISES LIMITED,
               *Defendant-Appellant.*

No. 06-1588

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Senior District Judge.
(1:06-mc-00007-CMH)

Argued: March 16, 2007

Decided: December 27, 2007

Before WILKINSON and TRAXLER, Circuit Judges, and
WILKINS, Senior Circuit Judge.

___

Reversed and remanded by published opinion. Judge Traxler wrote
the majority opinion, in which Senior Judge Wilkins joined. Judge
Wilkinson wrote a dissenting opinion.

___

## COUNSEL

**ARGUED:** James Wilson Dabney, FRIED, FRANK, HARRIS,
SHRIVER & JACOBSON, L.L.P., New York, New York, for Appel-

lant. Douglas Vernon Rigler, YOUNG & THOMPSON, Arlington, Virginia, for Appellee. **ON BRIEF:** Darcy M. Goddard, FRIED, FRANK, HARRIS, SHRIVER & JACOBSON, L.L.P., New York, New York, for Appellant. Andrew J. Patch, Jeff Goehring, YOUNG & THOMPSON, Arlington, Virginia, for Appellee.

---

**OPINION**

TRAXLER, Circuit Judge:

Rosenruist-Gestao E Servicos LDA ("Rosenruist") is a Portuguese company that seeks to obtain a United States trademark registration and enjoy the benefits that accompany ownership of a registered mark under the Lanham Act. Virgin Enterprises Ltd. ("VEL"), a British conglomerate that owns numerous United States registrations, opposes the registration of Rosenruist's mark and commenced an administrative proceeding before the Trademark Trial and Appeal Board ("TTAB") against Rosenruist to prevent the registration. When Rosenruist refused to appear voluntarily for a Rule 30(b)(6) deposition under the procedural rules promulgated by the Patent and Trademark Office ("PTO"), *see* 37 C.F.R. § 2.123 (2006), the district court issued a subpoena under 35 U.S.C.A. § 24 directing Rosenruist to produce a designee to testify on behalf of the corporation at a deposition in Virginia. The district court refused Rosenruist's request to quash the subpoena and then subsequently imposed sanctions against Rosenruist when it failed to attend the deposition.

Seeking to ensure Rosenruist's cooperation, VEL filed a motion to compel Rosenruist, on pain of contempt sanctions, to designate its Rule 30(b)(6) representative and appear for the corporate deposition as directed by the subpoena. Notwithstanding its earlier ruling that Rosenruist had been properly served with a valid subpoena for a Rule 30(b)(6) deposition, the court determined that it could not require Rosenruist to produce a corporate designee for the deposition unless that designee personally resided within the district of the issuing court. Because there are no individuals residing within the Eastern District of Virginia who Rosenruist could designate as its witness under Rule 30(b)(6), the court denied VEL's request to compel an appearance.

VEL appeals this ruling. For the reasons that follow, we reverse.

## I.

Rosenruist filed an application in December 2002 with the PTO to register the mark VIRGIN GORDA under section 1(b) of the Lanham Act. *See* 15 U.S.C.A. § 1051(b) (West Supp. 2007). At the time, Rosenruist had not sold any products in the United States or established a business presence here. Section 1(b) of the Act permits an applicant to seek trademark registration based on the applicant's intent to use the trademark in commerce rather than the actual use of the mark, provided that the applicant later files "a verified statement that the mark is in use in commerce." *See* 15 U.S.C.A. § 1051(d)(1) (West Supp. 2007).[1]

Rosenruist applied to register based on its intent to use the mark VIRGIN GORDA in connection with forty-one categories of goods, including "[b]ags, purses, . . . traveling bags, trunks, make-up bags and empty vanity cases, document holders, umbrellas, [and] handbags," as well as various kinds of clothing and footwear. J.A. 46. In its application with the PTO, Rosenruist appointed various members of the Virginia-based law firm prosecuting the application as "domestic representatives" under 15 U.S.C.A. § 1051(e) to act as Rosenruist's designees "upon whom notices or process in proceedings affecting this mark may be served." J.A. 52.

Initially, the PTO's examining attorney refused registration on the basis that the VIRGIN GORDA mark is "primarily geographically deceptively misdescriptive," 15 U.S.C.A. § 1052(e)(3) (West Supp. 2007), explaining that Virgin Gorda is an island located within the British Virgin Islands and that its proposed use would cause the pub-

---

[1] Although the owner of a mark may *apply* for registration based on his intent to use the mark in the future, the mark is not registrable until it has actually been used in commerce and the applicant has filed a statement verifying such use. *See* 15 U.S.C.A. §§ 1051(b), (d). This requirement reflects the fundamental principle in American trademark law that ownership rights flow from actual use of the mark in commerce. *See Emergency One, Inc. v. American Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003).

lic to mistakenly believe that Rosenruist's goods bearing this mark came from the Virgin Islands. Ultimately, however, the examining attorney agreed with Rosenruist that there was insufficient basis for believing that the misdescription would be a material factor in the consuming public's purchasing decisions, withdrew the refusal to register, and caused the PTO to publish the mark in its Official Gazette. *See* 15 U.S.C.A. § 1062(a) (West Supp. 2007).

In July 2004, VEL filed a Notice of Opposition with the PTO. *See* 15 U.S.C.A. § 1063(a) (West Supp. 2007). VEL has a substantial presence in the United States through a vast array of businesses such as Virgin Atlantic Airways, Virgin Records, Virgin Mobile, Virgin Wines, and Virgin Digital. The VEL conglomerate and its related companies sell and distribute a wide variety of goods and services under the registered VIRGIN mark, including clothing, cosmetics, luggage, bags, wallets, umbrellas, records and CDs, telecommunications products, airline and travel-related services, and restaurant and hotel services. VEL asserted that it would be damaged by the proposed VIRGIN GORDA registration because it is confusingly similar to VEL's VIRGIN mark. Under the trademark practice rules adopted by the PTO, VEL conducted limited discovery through written questions, but it did not seek to conduct a discovery deposition prior to the expiration of the discovery period. *See* 37 C.F.R. § 2.120(a).

In December 2005, VEL, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, sought to conduct a testimonial deposition of Rosenruist to present in evidence at trial before the TTAB.[2] When

---

[2]We note that the discovery period had expired by the time VEL requested Rosenruist appear for a Rule 30(b)(6) deposition. In opposition proceedings before the TTAB, discovery depositions and testimonial depositions for presentation at trial are treated very differently. *Compare* 37 C.F.R. § 1.120 (2006) *with* 37 C.F.R. § 1.123 (2006); *see generally Fischer Gesellschaft m.b.H. v. Molnar & Co.*, 203 U.S.P.Q. 861 (T.T.A.B. 1979). A deposition taken pursuant to Rule 30(b)(6) strikes us as a discovery tool, given its general purpose of permitting the examining party to discover the corporation's position via a witness designated by the corporation to testify on its behalf. Nevertheless, we are not faced today with the issue of whether the PTO's rules allow a Rule 30(b)(6) deposition to be taken during the testimony periods set by the TTAB.

Rosenruist refused to appear voluntarily in the United States for an oral deposition, VEL moved pursuant to the PTO's rules of procedure to compel Rosenruist to identify a Rule 30(b)(6) representative and produce that person to testify for the corporation at an oral deposition in Portugal. *See* 37 C.F.R. § 2.123(a)(2) (2006). The TTAB denied VEL's motion to compel, noting that, according to its manual of procedure, a party residing in a foreign country may be compelled to appear for an oral testimonial deposition only through the procedures provided in The Hague Convention or the issuance of letters rogatory to the appropriate Portuguese legal authority. *See* Trademark Trial and Appeal Board Manual of Procedure ("TBMP") §§ 703.01(a), (f)(3) (2d ed. 2003).

In January 2006, VEL served Thomas Perkins — one of the lawyers designated by Rosenruist as its representative under § 1051(e) — with a Rule 30(b)(6) deposition subpoena directing the Rosenruist corporation to appear in McLean, Virginia, and produce the "person having [the] most knowledge" regarding, among other topics, "[t]he factual representations made in [Rosenruist's trademark] Application." J.A. 140, 142.

The subpoena was issued by the district court for the Eastern District of Virginia pursuant to 35 U.S.C.A. § 24, which provides in pertinent part:

> The clerk of any United States court for the district wherein testimony is to be taken for use in any contested case in the [PTO], shall, upon the application of any party thereto, issue a subpoena for any witness residing or being within such district, commanding him to appear and testify before an officer in such district authorized to take depositions and affidavits, at the time and place stated in the subpoena. The provisions of the Federal Rules of Civil Procedure relating

The magistrate judge below concluded that Rosenruist did not contest VEL's right to seek the Rule 30(b)(6) testimony, and Rosenruist has not challenged that conclusion on appeal. Thus, we assume for purposes of this appeal that the Rule 30(b)(6) deposition sought by VEL is a testimonial deposition like any other under the PTO's procedures.

> to the attendance of witnesses . . . shall apply to contested cases in the [PTO].

35 U.S.C.A. § 24 (West 2001).

Rosenruist moved pursuant to Rule 45(c)(3)(A) to quash the subpoena, *see* Fed. R. Civ. P. 45(c)(3)(A), arguing that the district court lacked the authority to subpoena a foreign resident to appear in the United States for a deposition, that VEL was attempting to circumvent the proper procedure for compelling Rosenruist's testimonial deposition as outlined by the TTAB in its order denying VEL's initial motion to compel, and that service of the subpoena on counsel for Rosenruist was ineffective even if the subpoena was valid.

The magistrate judge concluded that the subpoena was properly issued and valid under 35 U.S.C.A. § 24 and rejected Rosenruist's argument that § 24 did not give the district court subpoena power over non-resident foreign corporations. The magistrate judge also concluded that service of the subpoena on counsel for Rosenruist was effective because Rosenruist, in conjunction with its registration application, had designated counsel to accept service of "notices or process in proceedings affecting the mark." 15 U.S.C.A. § 1051(e) (West Supp. 2007). Accordingly, on March 2, 2006, the magistrate judge entered an order denying Rosenruist's motion to quash and directing Rosenruist "to designate a Rule 30(b)(6) witness residing or being within this judicial district to appear for deposition by March 15, 2006." J.A. 185. Rosenruist filed objections to the order of the magistrate judge, *see* Fed. R. Civ. P. 72(a), arguing primarily that the district court lacked the authority to issue a subpoena to non-resident aliens. The district court denied Rosenruist's objections, finding that the decision of the magistrate judge was not contrary to law and did not rest on clearly erroneous factual findings. Rosenruist did not appeal the order denying its motion to quash.

Following the court's denial of Rosenruist's motion to quash, VEL re-served the subpoena and rescheduled the deposition. Rosenruist, however, refused to produce a Rule 30(b)(6) designee at the deposition. Instead, counsel for Rosenruist appeared and announced that Rosenruist did not intend to designate a representative to testify on behalf of the corporation as there was no such person "residing or

being" within the Eastern District of Virginia. J.A. 259.[3] VEL then sought and obtained sanctions against Rosenruist for its failure to appear at the deposition. The magistrate judge ordered that Rosenruist pay the legal fees and costs incurred by VEL in connection with counsel's preparation for and appearance at the deposition.

On March 31, 2006, in view of Rosenruist's continued belief that it was neither required nor able to comply with the subpoena, VEL moved the district court for an order compelling Rosenruist to obey the subpoena, which the court had already deemed valid, and to produce an appropriate representative under Rule 30(b)(6) to be deposed on the subjects identified in the subpoena. VEL argued that, because a corporation can only testify through its individual representatives, Rosenruist was technically the witness in a Rule 30(b)(6) deposition. And, because Rosenruist had designated a Virginia resident as domestic representative under 15 U.S.C.A. § 1051(e), it was within the judicial district wherein the deposition testimony would be taken. *See* 35 U.S.C.A. § 24. VEL asserted that "Rosenruist can no more refuse to attend its own deposition than can any other alien corporate litigant that is subject to the Court's *in personam* jurisdiction." J.A. 345-46.

In response, Rosenruist argued that all of its potential Rule 30(b)(6) designees were foreign citizens residing outside the United States and beyond the reach of the court's subpoena power under 35 U.S.C.A. § 24; that the court did not even have personal jurisdiction over Rosenruist, which had not conducted any business in the country; and that Rosenruist, as a corporation, did not qualify as a witness under 35 U.S.C.A. § 24 because the statute pertains only to subpoenas directed to natural person witnesses.

After hearing VEL's motion to compel, the magistrate judge concluded that, even though Rosenruist had been properly served with a valid subpoena, Rosenruist was not required to produce a Rule 30(b)(6) designee unless that designee resided within the district. The decision of the magistrate judge rested on his conclusion that the term "witness" as used in the statute applied only to natural persons. The court instructed Rosenruist to file a declaration indicating that there

---

[3]Meanwhile, Rosenruist, through counsel, attended and participated fully in the testimonial depositions of various VEL officers.

was no officer, director, or managing agent of Rosenruist residing in the district who could address the topics listed in the subpoena. Likewise, the court instructed Rosenruist to include in its declaration a statement regarding whether there resided within the district "other persons" who "consent[ed] to testify on its behalf." J.A. 409. Because the magistrate judge did not compel Rosenruist to produce a Rule 30(b)(6) designee but did require Rosenruist to respond with the aforementioned declaration, the magistrate judge issued an order "grant[ing] in part and deny[ing] in part" VEL's motion to compel. J.A. 381. Following the hearing, Rosenruist filed a declaration stating that there was "no officer, director, or managing agent or other person who consents to testify on Rosenruist's behalf in this District," J.A. 414.

VEL filed objections to the magistrate judge's order, arguing that 35 U.S.C.A. § 24 did not limit "witness" to natural persons and that, therefore, a corporation could be compelled to appear at a deposition regardless of where the Rule 30(b)(6) designee might personally reside. The district court again concluded that the ruling of the magistrate judge was not clearly erroneous or contrary to law. VEL then filed this appeal.

## II.

Before turning to the particular arguments of the parties, we believe it is helpful to consider very briefly the role of the district court in the context of an opposition proceeding before the TTAB, as well as the interplay between the Federal Rules of Civil Procedure and the PTO's rules of procedure.

The TTAB is an administrative tribunal of the PTO with jurisdiction over *inter partes* challenges to the registration of trademarks. *See* 15 U.S.C.A. § 1067(a) (West Supp. 2007).[4] Procedure in *inter partes*

---

[4]An *inter partes* proceeding before the TTAB is an adversarial action between parties regarding the registrability of a proposed trademark. An *inter partes* proceeding can take the form of an opposition proceeding, *see* 15 U.S.C.A. § 1063 (West 1997 & Supp. 2007); a cancellation proceeding, *see* 15 U.S.C.A. § 1064 (West 1997 & Supp. 2007); an interference proceeding, *see* 15 U.S.C.A. § 1066 (West Supp. 2007); or a concurrent use proceeding, *see* 37 C.F.R. § 2.42 (2006).

matters diverges from that in district court at the trial stage, in that the taking of testimony does not occur in the presence of the TTAB. Instead, testimony is taken by deposition during set testimony periods, and the TTAB resolves all factual issues based on the written record submitted by the parties. *See* 37 C.F.R. §§ 2.121, 2.123, 2.125 (2006).

*Inter partes* proceedings before the TTAB are governed by the Rules of Practice in Trademark Cases adopted by the PTO and set forth in Part 2 of Title 37 of the Code of Federal Regulations. *See* 35 U.S.C.A. § 23 (West 2001) (granting the Director of the PTO the authority to "establish rules for taking affidavits and depositions required in cases in the [PTO]"). The PTO's rules were "adapted from the Federal Rules [of Civil Procedure], with modifications appropriate to the administrative process." *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 1575 (Fed. Cir. 1988). Under the PTO's rules, the Federal Rules of Civil Procedure generally apply to all phases of *inter partes* proceedings, *see* 37 C.F.R. § 2.116(a), including discovery and the taking of depositions, *see* 37 C.F.R. § 2.120(a).

As an administrative tribunal of limited jurisdiction, the TTAB is empowered only to decide whether a given trademark is registrable. *See* 15 U.S.C.A. §§ 1067, 1068 (West Supp. 2007); 15 U.S.C.A. § 1070 (West 1997); *Person's Co. v. Christman*, 900 F.2d 1565, 1571 (Fed. Cir. 1990). Although the TTAB has the authority to impose limited sanctions upon *parties* that fail to cooperate during discovery, *see* 37 C.F.R. §§ 2.120(e), (g), the TTAB lacks the authority to compel witnesses through the subpoena power to appear for testimony in *inter partes* proceedings. *See* 37 C.F.R. § 2.120(b); *Consolidated Foods Corp. v. Ferro Corp.*, 189 U.S.P.Q. 582, 583 (T.T.A.B. 1976).

Accordingly, Congress granted district courts subpoena authority under 35 U.S.C.A. § 24 to command the appearance of witnesses in administrative proceedings before the PTO. *See Frilette v. Kimberlin*, 508 F.2d 205, 207 (3d Cir. 1975) (en banc); *Vogel v. Jones*, 443 F.2d 257, 259 (3d Cir. 1971). Under this statute, district courts have "jurisdiction to . . . issu[e] . . . subpoenas" in PTO proceedings. *Frilette*, 508 F.2d at 207. This narrow jurisdictional grant assigns district courts the limited function in contested PTO matters of "issu[ing] and enforc[ing] subpoenas in connection with the preparation of evidence

for submission" to the administrative tribunal. *Id.* at 209. Thus, § 24 assigns a supportive role to the district courts to ensure the smooth functioning of the procedures adopted by the PTO. *See id.* at 210 (describing the function of the district court as "co-operatively complementing" the PTO) (internal quotation marks omitted).

### A.

With this context in mind, we turn to VEL's challenge to the conclusion of the magistrate judge that "witness" in 35 U.S.C.A § 24 refers only to natural persons and not to corporations or other juristic persons. The effect of the magistrate judge's conclusion was that, despite the fact that Rosenruist *itself* was properly served a valid subpoena directing it to designate a corporate representative for a Rule 30(b)(6) deposition of the *corporation*, the court could not require Rosenruist to produce its designee unless the designee was "residing or being within" the Eastern District of Virginia.

For the reasons set forth below, we agree with VEL that the term "witness," as used in the statute, is not limited to natural persons and allows the court to reach corporations and other juristic persons. Because the unappealed order of March 2, 2006, established for purposes of this case that the subpoena was valid and that Rosenruist, as the subject of the subpoena, was required to obey it, it follows that the district court should have granted VEL's motion to compel.

### 1.

As we noted above, the PTO's rules of practice generally incorporate the deposition procedures prescribed by the Federal Rules of Civil Procedure, specifically including Rule 30(b)(6). *See* 37 C.F.R. § 2.120(b) (2006). Pursuant to Rule 30(b)(6), a party may name a *corporation* as a deponent, in either a notice of deposition or a subpoena:

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named

shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.

Fed. R. Civ. P. 30(b)(6).

Prior to the adoption of this rule in 1970, a party wishing to establish the knowledge of a corporate entity was forced to identify and subpoena a specific officer or representative of the corporation who qualified as a director, officer, or managing agent. *See Founding Church of Scientology of Washington, D.C., Inc. v. Webster*, 802 F.2d 1448, 1451 (D.C. Cir. 1986). That practice was supplemented with the addition of Rule 30(b)(6), which allows the examining party to seek the corporation's testimony without regard to who actually provides the testimony on behalf of the organization. If "[t]he party seeking discovery . . . simply name[s] the corporation . . . as the deponent," it becomes "the duty of the corporation to name one or more persons who consent to testify on its behalf . . . as to matters known or reasonably available to the corporation." 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2102, at 30-31 (2d ed. 1994). Essentially, "[i]n a Rule 30(b)(6) deposition, there is no distinction between the corporate representative and the corporation." *Sprint Commc'ns. Co. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006).

Thus, like any person named in a subpoena to appear as a deponent or witness, a corporation may be named in a subpoena issued under Rule 45, which "command[s] each *person* to whom it is directed to attend and give testimony" at a trial or deposition. Fed. R. Civ. P. 45(a)(1)(C) (emphasis added); *see* Fed. R. Civ. P. 30(a)(1) ("A party may take the testimony of any *person*, including a party, by deposition upon oral examination . . . .") (emphasis added). Thus, the word "person" in Rule 45 is not limited merely to "natural persons" but includes juristic persons like corporations and governments as well. *Cf. Yousuf v. Samantar*, 451 F.3d 248, 257 (D.C. Cir. 2006) (explaining that "[t]he term 'person' as used in the Federal Rules of Civil Procedure consistently means . . . natural persons and business associations . . . [as well as] governments" and holding that "the Government is a 'person' subject to subpoena under Rule 45").

If a party to an *inter partes* proceeding wishes to take the trial testimony of an adverse party or an official of an adverse party who is unwilling to appear voluntarily, then the examining party must secure attendance of the deponent by subpoena. *See Health-Tex, Inc. v. Okabashi (U.S.) Corp.*, 18 U.S.P.Q.2d 1409, 1410 (T.T.A.B. 1990). As mentioned previously, the TTAB is not vested with the power to subpoena witnesses in *inter partes* PTO cases. Under 35 U.S.C.A. § 24, Congress instead granted to district courts the power to enforce the rights of litigants to secure the presence of witnesses in contested proceedings in the PTO: "The clerk of any United States court for the district wherein testimony is to be taken for use in any contested case in the Patent and Trademark Office, shall, upon the application of any party thereto, issue a subpoena for any *witness* residing or being within such district . . ." 35 U.S.C.A. § 24 (emphasis added).

We agree with VEL that the "witness" is not limited only to natural persons. The PTO regulations expressly contemplate the use of Rule 30(b)(6) depositions in which the corporation is the "person" named in the subpoena as the deponent. *See* 37 C.F.R. §§ 2.120(b), 2.124(b)(2). Nothing in the text of 35 U.S.C.A. § 24 suggests to us that, in the context of a contested PTO action, the interplay between Federal Rules 30(b)(6) and 45 operates differently. Indeed, the statute expressly provides that, in contested PTO cases, "[t]he provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses . . . shall apply." 35 U.S.C.A. § 24. Nor do we see anything in the statute indicating that Congress wished to tie the court's power to subpoena corporate testimony under Rule 30(b)(6) to the personal residence of the individuals ultimately designated by the corporation to testify on its behalf. Foreign corporations that are subject to the personal jurisdiction of a district court can be and often are required to produce officers, directors, or managing agents — regardless of where such witnesses personally reside — in the United States for a Rule 30(b)(6) deposition. *See Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333, 336 (N.D. Ind. 2000); *In re Honda Am. Motor Co. Dealership Relations Litig.*, 168 F.R.D. 535, 540-42 (D. Md. 1996).

Accordingly, we do not agree with the magistrate judge's narrow interpretation of "witness," and we hold that corporations, as well as natural persons, are subject to the issuance of Rule 30(b)(6) subpoe-

nas pursuant to 35 U.S.C.A. § 24. And, as a result, we believe the magistrate judge incorrectly concluded that Rosenruist could avoid designating and producing a Rule 30(b)(6) deponent because none of its potential designees were personally "residing or being within" the Eastern District of Virginia.

2.

Rosenruist contends that even if the corporation itself can be considered a "witness" under 35 U.S.C.A. § 24, rendering the individual designee's residence or location irrelevant for purposes of a *corporate* subpoena, the subpoena was invalid because Rosenruist itself was not "residing or being within" the district. Rosenruist has not developed this argument except to assert that it lacks the required presence because it "has no business activities, no managing agents, and no agents consenting to testify within the district or anywhere in the U.S." Brief of Appellee at 25. Additionally, Rosenruist points out, the designation of a statutory agent for service under 15 U.S.C.A. § 1051(e) is not sufficient to subject a corporation to the court's subpoena power under § 24.

Rosenruist also contends that the subpoena was not valid because the Rosenruist corporation lacked the "continuous and systematic contacts" with the Eastern District of Virginia necessary to support the district court's exercise of *in personam* jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *see Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) (concluding that the designation of a statutory agent for service was insufficient to confer general jurisdiction over an out-of-state corporation).

Although Rosenruist advances these arguments as separate challenges to the validity of the subpoena, they are essentially one and the same argument — that Rosenruist is not subject to the court's subpoena power under § 24 because Rosenruist lacks sufficient contacts in the Eastern District of Virginia. We infer that Rosenruist views the "residing or being" requirement of § 24 as commensurate with the requirements for a court's exercise of general jurisdiction over a party.

We conclude these arguments are not properly before the panel because the validity of the subpoena has already been determined. Thus, we need not determine precisely what is required for a witness to satisfy the statute's "residing or being" component, although we find no support for the notion that the statute requires the "systematic and continuous" presence needed for the exercise of general jurisdiction.[5]

The March 2, 2006, order rejected Rosenruist's motion to quash in which Rosenruist asserted in part that it was not subject to the court's subpoena power. The order established that the subpoena was valid and that the requirements of 35 U.S.C.A. § 24 had been satisfied. Rosenruist did not appeal this ruling.

Subsequently, in its opposition to VEL's motion to compel a Rule 30(b)(6) designation and appearance, Rosenruist argued that the court lacked *in personam* jurisdiction over it and therefore could not enforce the subpoena against it. The court effectively rejected Rosenruist's jurisdictional argument and reiterated that Rosenruist was subject to the subpoena when it granted VEL's motion in part and ordered Rosenruist to designate a Rule 30(b)(6) witness or submit a declaration that no qualifying witness resided or was present within the district. The court, however, refused to require an appearance. VEL, of course, appealed the latter portion of the order, and that appeal is before us now. Rosenruist did not file a cross-appeal.

A prevailing party may urge an appellate court "to affirm a judgment on any ground appearing in the record," *Toll Bros., Inc. v. Dryvit Sys., Inc.*, 432 F.3d 564, 572 (4th Cir. 2005), and may do so without having to file a cross-appeal, *see Blum v. Bacon*, 457 U.S. 132, 137 n.5 (1982). If the prevailing party raises arguments that seek to alter or modify the judgment below, then a cross-appeal is required. *See El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999) ("Absent a cross-appeal, an appellee may urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court, but may not

---

[5]Were the issue before us, however, we would conclude that Rosenruist's activities in this case were sufficient to qualify it as "being within [the] district."

attack the decree with a view either to enlarging his own rights there-under or of lessening the rights of his adversary." (internal quotation marks omitted)); *see also JH ex rel. JD v. Henrico County Schl. Bd.*, 326 F.3d 560, 567 n.5 (4th Cir. 2003) ("The general rule is that with-out taking a cross-appeal, the prevailing party may present any argu-ment that supports the judgment in its favor as long as the acceptance of the argument would not lead to a reversal or modification of the judgment . . . ." (internal quotation marks and alteration omitted)).

Here, Rosenruist asks us to affirm the court's refusal to require it to produce a Rule 30(b)(6) witness as commanded by the subpoena based on Rosenruist's lack of presence and the issuing court's lack of personal jurisdiction. As explained previously, the court below clearly concluded that the subpoena was valid and that Rosenruist *as a cor-poration* was subject to the subpoena. Thus, these particular argu-ments, were the panel to accept them, would require us to modify the court's judgment below and enlarge Rosenruist's rights thereunder. Because Rosenruist did not assert a cross-appeal, we decline to con-sider these issues.

### B.

Rosenruist next contends that § 24 was enacted only to enforce the rules and procedures developed by the PTO, and VEL's reading of the statute will permit it to exercise procedural rights beyond those estab-lished by the PTO. *See Frilette*, 508 F.2d at 209-11 (rejecting the notion that 35 U.S.C.A. § 24 allows a party to bootstrap itself into additional means of discovery not provided by the PTO).

Relying on the TBMP (the TTAB's Manual of Procedure) Rosen-ruist suggests that the PTO's rules do not permit the attendance of a foreign witness to be secured by a subpoena. According to the TBMP, a "party [who] wishes to take the trial testimony of an adverse party or nonparty (or an official or employee of an adverse party or non-party) residing in the United States . . . [who] is not willing to appear voluntarily to testify . . . must secure the attendance of the witnesses by subpoena." TBMP § 703.01(f)(2). The TBMP provides that for an unwilling witness who resides in a foreign country, however, "[t]here is no certain procedure for obtaining . . . the trial testimony deposition of [such] a witness" and that the deposing party may obtain such testi-

mony through "the letter rogatory procedure or the Hague Convention letter of request procedure." TBMP § 703.01(f)(3).

It is important to recognize that the TBMP is simply a manual issued by the TTAB "to practitioners with basic information generally useful for litigating cases before the [TTAB]," which expressly acknowledges that it "does not modify, amend, or serve as a substitute for any statutes, rules or decisional law and is not binding upon the [TTAB]." TBMP, Intro. The TBMP does not provide, or even purport to provide, authoritative interpretive guidance with regard to the scope of 35 U.S.C.A. § 24 or any other statute. Rather, it merely sets forth the TTAB's informal opinion that the statute does not provide authority for a district court to issue a subpoena to an unwilling foreign deponent. We are neither bound by the TBMP nor obligated to consider its statutory interpretation particularly persuasive.

We conclude that reading the statute to permit the issuance of a Rule 30(b)(6) subpoena to Rosenruist does not expand or add to the procedures established by the PTO. As noted above, the PTO's rules of procedure allow for the use of Rule 30(b)(6) depositions in *inter partes* cases and permit the taking of trial testimony "by depositions upon oral examination." 37 C.F.R. § 2.123(a); *see id.* § 2.123(c) ("Depositions may be noticed for any reasonable time and place in the United States.").[6] The issue here simply involves the extent of the district court's subpoena power under § 24 to ensure that parties are able to use the existing PTO *inter partes* procedures. VEL is not seeking to exercise a right or use a procedure that the PTO has not provided.

## C.

Finally, Rosenruist argues that the service of the subpoena was

---

[6]The regulations relied upon in the dissenting opinion pertain to *discovery* depositions, *see* 37 C.F.R. §§ 2.120(b), (c), as opposed to the testimonial depositions at issue here. As such, these regulations do not support the premise that our decision permits VEL to use § 24 as a means of circumventing the PTO's procedures. Likewise, 37 C.F.R. § 2.123(a)(2) is of no use in this case because it applies only when a party seeks to take a testimonial deposition *in a foreign country*; VEL, of course, does not desire to do so.

ineffective because it failed to comply with Rule 45(b)(1), which requires the witness fee and reasonably estimated mileage to be tendered at the time of service. *See* Fed. R. Civ. P. 45(b)(1); *In re Dennis*, 330 F.3d 696, 705 (5th Cir. 2003). We reject this argument. In the March 2, 2006, order denying Rosenruist's motion to quash, the magistrate judge determined that service was effective. Rosenruist did not appeal that order. The magistrate judge also reiterated that conclusion in the May 2, 2006, order which is the subject of this appeal. Because Rosenruist did not cross-appeal this portion of the court's decision, we decline to address it. *See Pritchett v. Alford*, 973 F.2d 307, 315 (4th Cir. 1992).

III.

For the foregoing reasons, we reverse the order of the district court denying VEL's motion to compel Rosenruist to obey the subpoena, and we remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*

WILKINSON, Circuit Judge, dissenting:

In a first for any federal court, my colleagues hold that a foreign company that has no United States employees, locations, or business activities must produce a designee to testify at a deposition in the Eastern District of Virginia so long as it has applied for trademark registration with a government office located there. 35 U.S.C. § 24 (2000). As a result, foreign witnesses can be compelled to travel to the United States and give in-person deposition testimony at the behest of any litigant in a trademark dispute, "for use in any contested case in the Patent and Trademark Office" ("PTO") — though the PTO's own procedures call for obtaining testimony from foreign companies through other means. *Id.*

The majority's holding that this subpoena is enforceable is problematic for many reasons. It fails to properly apply the statute, 35 U.S.C. § 24, that is directly relevant to its decision, and it reaches a result that is bound to embroil foreign trademark applicants in lengthy, procedurally complex proceedings. It inverts longstanding

canons of construction that seek to protect against international discord, and it disregards the views of the PTO whose proceedings 35 U.S.C. § 24 is designed to aid. In view of the statutory text (*see* Section I), interpretive canons, international relationships, and separation of powers concerns (II), and the PTO's own framework (III), I firmly believe this subpoena must be quashed.

I recognize this is an extensive dissent. However, the brevity of the majority's conclusion belies its significance. No matter how one cuts the cookie, the bottom line is that the majority enforces the subpoena. In so doing, the majority creates a standard that is in fact a national one: the PTO is located in the Eastern District of Virginia; applications for trademark registration are filed there; and subpoena enforcement will frequently be sought in that district. Indeed, for any foreign corporation without a pre-existing United States presence, the majority's decision will be controlling. For this reason, among others, I think this decision is unfortunate. The decision to extend the subpoena power under 35 U.S.C. § 24 to foreign companies situated similarly to Rosenruist is one that is plainly before this court, and its importance warrants full discussion.

## I.

The first obstacle to the majority's view is the language of the statute itself. The statute provides,

> The clerk of any United States court for the district wherein testimony is to be taken for use in any contested case in the Patent and Trademark Office, shall, upon the application of any party thereto, issue a subpoena for *any witness residing or being within such district*, commanding him to appear and testify before an officer in such district authorized to take depositions and affidavits, at the time and place stated in the subpoena.

35 U.S.C. § 24 (emphasis added). The majority argues correctly that Rosenruist is a "witness" under this provision. My colleagues hold properly that the term "'witness' is not limited only to natural persons." *Ante* at 12. "[C]orporations, as well as natural persons, are sub-

ject to the issuance of Rule 30(b)(6) subpoenas pursuant to 35 U.S.C. § 24." *Ante* at 12-13. This is correct, and I agree with it fully.

The majority then gives short shrift, however, to the statute's very next words, which state that a party in patent proceedings may seek to subpoena only a "witness *residing or being within such district*." *Id.* (emphasis added). Through a strained interpretation of this case's procedural posture, the majority first claims that the issue of whether Rosenruist is "residing or being" within the Eastern District of Virginia is "not properly before the panel because the validity of the subpoena has already been determined." *Ante* at 14. Thus, the majority seems content to interpret only half of the relevant statutory phrase.

However, the majority then issues a conclusory statement, albeit in dicta, that "Rosenruist's activities in this case were sufficient to qualify it as 'being within [the] district.'" *Ante* at 14 n.5. It is not a good idea to have a single sentence of dicta pass upon matters of such foreign and domestic import. As a result, the majority expresses its view on the merits in a manner that avoids any need for explication, but is simultaneously bound to influence how district courts interpret this enactment.

The upshot of this ruling is painfully clear. The majority first entangles foreign trademark applicants in a procedural web by misapplying basic principles of appellate process. It then flatly and wrongly concludes that the statute affords no protection to the prospective trademark registrants.

A more effective one-two punch could not have been landed upon foreign trademark applicants. Because I think that the question of the statute's application is clearly before us and that Rosenruist cannot be described, under any reasonable interpretation of 35 U.S.C. § 24, as "residing or being" within the Eastern District of Virginia, I respectfully dissent from both the majority's procedural and substantive conclusions.

A.

Because, through any lens, 35 U.S.C. § 24 is integral to the resolu-

tion of this case, I begin with a discussion of the statute itself. In plain language, the statute limits the geographic scope of a PTO litigant's subpoena powers to those "residing or being" within a U.S. judicial district. In ordinary use, limiting compulsory depositions to witnesses "residing or being" within a district requires a physical presence or at least sustained contacts in a district. *The Random House Dictionary of the English Language*, for example, defines to "reside" as "to dwell permanently or for a considerable time," and defines "to be" as "to exist or live" or "to occupy a place or position." *Random House Dictionary of the English Language* (2d. ed. 1987).[1]

The PTO itself has embraced a geographically constrained view of the subpoena powers that § 24 confers with respect to its proceedings. Its clearest guidance on this matter comes from its Trademark Trial and Appeal Board Manual of Procedure. The manual states that a district in which a domestic witness is "residing or being" is a district "where the witness resides or is regularly employed." Trademark Trial and Appeal Board Manual of Procedure ("TTAB Manual") § 703.01(f)(2) (2d ed. revision 1, 2004). If a PTO litigant wishes to obtain testimony of an unwilling adverse party, the litigant "must secure the attendance of the witness by subpoena . . . pursuant to 35 U.S.C. § 24 and Fed. R. Civ. P. 45, from the United States district court in the Federal judicial district *where the witness resides or is regularly employed*." *Id.* (emphasis added). As the majority notes, the manual does not substitute for the statute itself or for the PTO's regulations, *ante* at 16, but the manual is entitled to respect as the PTO's own description of its "current practice and procedure under the applicable authority." *See* TTAB Manual, Introduction.

---

[1]Section 24's limitation to witnesses "residing or being" in a district is virtually unique and has not been the subject of prior judicial construction. Only three provisions of the U.S. Code, including this one, contain the "residing or being" phrase. *See* 7 U.S.C. § 2354(a) (2000) (subpoena power for contested cases in Plant Variety Protection Office); 50 U.S.C. § 207 (2000) (Civil War-era statute concerning "commercial intercourse by and between persons residing or being within districts within the lines of national military occupation in the States . . .").

B.

Rosenruist, a Portuguese company, cannot be described as "residing or being" in the Eastern District of Virginia within the meaning given to these terms by the PTO or indeed with any meaning consistent with ordinary use. Rosenruist has no physical or commercial presence in the district, and no officers or employees either there or anywhere in the United States. It has no facilities, buildings, or operations in the Eastern District and has not carried out commercial activities there or elsewhere in the country.

Virgin Enterprises Ltd. ("VEL"), which seeks in-person depositions in the United States with Rosenruist officials, argues that Rosenruist can nevertheless be compelled to testify because it has filed an application for trademark registration with a government office located within the Eastern District of Virginia, and is "affirmatively press-[ing] a claimed right to issuance of a United States trademark registration." *Brief of Appellant* at 37. But a person or company is no more "residing or being" within a district by virtue of seeking trademark protection with an office located there than a person would be "residing or being" within a district because he or she applied for a license without so much as setting foot in the territory. Filing an application with a government office is a contact within a jurisdiction, but it does not establish a physical presence or sustained contact akin to a presence within a district.

This trademark application and the attendant proceedings are Rosenruist's sole contacts with the district — as evidenced by the way in which VEL subdivides paperwork and proceedings surrounding the single trademark application in an effort to portray multiple, incidental contacts. Rosenruist designated attorneys as its representatives for service of process in proceedings affecting its proposed trademark, under a statute providing that if a company does not name a representative, the Director of the Patent and Trademark Office will be designated to fill the role. 15 U.S.C. § 1051(e) (2000). Appointment of an agent for service of process is a contact so minimal that our circuit has held it cannot render a company subject to judicial compulsion under *any* statute consistent with Due Process principles limiting personal jurisdiction, much less under a statute whose language requires more than the constitutional minimum. *Ratliff v. Coo-*

*per Labs.*, 444 F.2d 745, 748 (4th Cir. 1971). Moreover, under § 1051, a trademark applicant always has a representative for service of process as a result of registering a mark, whether by designation or default — making this so-called contact no more than an aspect of filing a trademark application with the PTO.

Nor can the existence of a case before the PTO mean that Rosenruist is "residing or being" within the Eastern District of Virginia. VEL contested Rosenruist's trademark application by filing an opposition, *see* 15 U.S.C. § 1063 (2000), generating a "contested case in the Patent and Trademark Office," in which Rosenruist is the defendant. But this is also a consequence that may obtain whenever a company files an application for a trademark, because other companies or persons are free to contest trademark registrations. Moreover, the existence of a "contested case in the Patent and Trademark Office" is itself a precondition for a subpoena under § 24, separate from the statute's second requirement that witnesses can only be subpoenaed in a United States judicial district in which they are "residing or being." It is highly implausible that Congress meant this separate "residing or being" limitation to allow any witness, domestic or foreign, to be subpoenaed in the Eastern District whenever the statute's apparently distinct first requirement is satisfied and there is a "contested case" in the PTO.

In sum, the only contacts Rosenruist has had with the Eastern District of Virginia are the de minimis contacts from the act of filing for trademark registration itself. This does not entitle VEL to enforcement of the subpoena. Whatever consequences may ensue from Rosenruist's failure to appear is something Rosenruist might wish to ponder, but the only question before us is whether the subpoena must be quashed. I believe it must be. No matter how many times the act of filing for a trademark application is repackaged and restated by VEL, this act does not make up for the lack of any physical facilities, business activities, or company employees within a district sufficient to render a Portuguese company "residing or being" within the district. This is true under the PTO's own definition or under any definition consistent with the ordinary meaning of the limiting language enacted by Congress.

## C.

There is thus no question that 35 U.S.C. § 24 does not permit this subpoena to be enforced. The majority — in enforcing the subpoena and in concluding flatly that "Rosenruist's activities in this case were sufficient to qualify it as 'being within [the] district'" — manages astonishingly to say that the issue of the subpoena's enforcement pursuant to 35 U.S.C. § 24 is somehow not before the court. *Ante* at 14. This is too clever by half. The district court's ultimate judgment was that Rosenruist could not be compelled to give an in-person deposition because the conditions of 35 U.S.C. § 24 had not been met. *See ante* at 8. The majority, however, discusses who may be a "witness" under 35 U.S.C. § 24 and then re-labels the "residing or being" requirement of § 24 as a question bearing upon the "validity" of the subpoena, as though that will somehow make the statute go away. *See ante* at 10-14. But courts cannot interpret one word in a prepositional phrase and ignore another. By picking only selective portions of § 24 to interpret, the majority manages to enforce the subpoena, in violation of the explicit standard Congress has given us to apply.

With its actions, the majority ignores the fact that, as an appellate court, we sit to review *judgments*, not the reasons underlying such judgments. The district court rejected VEL's objections to the magistrate's denial of VEL's motion to compel Rosenruist's appearance at a deposition in this country. This is the judgment order VEL appeals. But the majority has elevated reasons into judgments. In focusing on the district court's construction of the term "witness," the majority fails to consider an alternate and valid reason for affirming the district court's judgment — namely, that Rosenruist cannot be deemed to "be" or "reside" within the district as § 24 requires. The majority cleaves § 24 in two, and finds that the district court rested its judgment on only part of the statute in question. But this is not the case: the enforceability of the subpoena rests on both the "witness" and the "residing or being" requirements, and we review the district court's judgment that the subpoena is not enforceable as to Rosenruist's deposition as a whole.

This is precisely how the parties understood the issue on appeal. *See Brief of Appellant* at 3 ("This case concerns the scope of the District Court's subpoena power under 35 U.S.C. § 24."); *Brief of Appel-*

*lee* at 4 (at issue is "whether the district court correctly denied VEL's motion to compel, subsequent to the Court's satisfying itself that Rosenruist had no 'witness' under 35 U.S.C. § 24 residing or being in the district"). Rosenruist is seeking to affirm the judgment declining to enforce the subpoena, not to modify any part of it, and a party seeking affirmance of a judgment need not lodge a cross-appeal to have that affirmance rest on an alternate ground. In view of the fact that this is a single judgment, and Rosenruist prevailed on that judgment, one cannot possibly saddle Rosenruist — as the majority has — with the obligation to file a cross-appeal. This at best creates busy work and at worst compounds the procedural snares the majority has devised for foreign companies at the outset of their trademark applications.

Furthermore, despite what I respectfully suggest is an incorrect rendering of the case's procedural posture, the majority cannot hide the true import of its opinion: that this subpoena is in its view perfectly enforceable. The majority reaches this conclusion by eschewing any interpretation of the "residing or being" language of 35 U.S.C. § 24, while at the same time expressing unequivocally its view on the merits of this question in a conclusory footnote. *Ante* at 14 n.5. This unexplained declaration is also error. It is inescapable that Rosenruist is not "residing or being" within the Eastern District of Virginia. Therefore, the subpoena may not be enforced.

II.

A.

My problems with the majority's decision do not end with what I respectfully suggest is its erroneous and conclusory view of 35 U.S.C. § 24. I also disagree with the disregard of cautionary canons of interpretation that apply to statutes bearing upon other nations' interests and international norms. The reach of American law in "situations involving one or more foreign contacts," *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 382 (1959), is constrained by maxims that "protect against unintended clashes between our laws and those of other nations which could result in international discord," *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991) (citing *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372

U.S. 10, 20-22 (1963)). The majority decision risks such disruption by enabling litigants to compel in-person depositions from foreign companies with the most minimal U.S. contacts, as a condition of those companies obtaining a legal protection that is critical to international commerce.

A sense of comity, not needless friction, should govern this whole area. The contours of the "rule of construction . . . derived from the principle of 'prescriptive comity,'" *Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 164 (2004) (internal citations omitted), are fatal to the majority's view of § 24. The rule requires that judges "ordinarily construe[ ] ambiguous statutes to avoid unreasonable interference with the sovereign authority of other nations" and assumes "that legislators take account of the legitimate sovereign interests of other nations when they write American laws." *Id.* While the majority of course is not trying to tell Portuguese authorities how to enforce Portuguese law, it is wading into international waters, not only without congressional authority but in the face of contrary congressional intent. All canons of statutory construction mandate caution in this context. By brushing aside 35 U.S.C. § 24 as well as the canons that should inform its construction, the majority instead mandates maximum levels of foreign corporate exposure to American judicial process. This approach does anything but help "the potentially conflicting laws of different nations work together in harmony . . . particularly needed in today's highly interdependent commercial world." *Hoffman-La Roche*, 542 U.S. at 164-65.

This presumption of comity, so helpful to good will and active commerce among nations, exists even with respect to statutes that specify no geographic limit. It emphatically exists with respect to statutes such as § 24 whose terms indicate that Congress wanted a limited territorial reach. Courts work from the "commonsense notion that Congress generally legislates with domestic concerns in mind." *Small v. United States*, 544 U.S. 385, 388 (2005) (quoting *Smith v. United States*, 507 U.S. 197, 204 n.5 (1993)). Indeed, courts do so even when "the more natural reading of the statutory language" would be to include foreign companies or conduct. *Hoffman-La Roche*, 542 U.S. at 174. For instance, *Small* held that a statute referring to a person "convicted in *any court*" did not apply to persons convicted in foreign courts, in part by invoking canons counseling limited construction of

general statutes in international contexts. 544 U.S. at 388 (emphasis added). It cannot be contended that these canons somehow do not apply to § 24, which is not even written in universal terms, but contains terms of geographic limitation.

These interpretive principles are too important for my good colleagues simply to ignore. It hardly respects the legitimate interests of other nations, *see Hoffman-La Roche*, 542 U.S. at 164, to allow litigants to compel in-person testimony in the Eastern District from representatives of foreign companies whose only act within our borders has been the filing of a trademark application. In giving regard to other nations' interests, the Supreme Court has held that judges "must assume" Congress ordinarily seeks to follow the Restatement of Foreign Relations Law in determining whether a U.S. statute applies. *Id.* at 164. The Restatement provides that a nation will not exercise its jurisdiction "when the exercise of such jurisdiction is unreasonable," *Rest. (Third) Foreign Rels. Law* § 403(1) (2006), and that a foreign person or company's "connections, such as nationality, residence, or economic activity" to the state are one relevant consideration, *id.* § 403(2)(b). To make the price of a simple trademark application an overseas trip by a company officer or officers to answer a deposition is to impose a substantial burden from a minimal connection.

I realize that when a subpoena is served upon a corporation, the corporation can designate whom it wishes to produce for the subpoena. *See* Fed R. Civ. P. 30. But this provides no meaningful relief, because an organization's Rule 30 designee must be fully prepared to "testify as to matters known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). The heart of Rosenruist's predicament is that it has no U.S. employees or U.S. operations, and consequently that no person within this country is equipped to testify "as to matters known or reasonably available" to the company. *Id.* VEL is surely correct that Rosenruist could change this, but only at considerable expense and over time. Rosenruist could hire a lawyer or other U.S. resident to serve as its representative for Rule 30 purposes, and provide the newly minted designee with a crash course in the matters of corporate strategy and intellectual property on which the company's testimony was sought. But a company's right to pay for a capable U.S.-based representative and then divert its officers to fully prepare the representative is hardly a compliance option that renders the

extension of § 24 to foreign companies such as Rosenruist a minimal imposition.

It may or may not be burdensome for the designee of a company large or small to fly from Portugal or India or Japan for a deposition in the Eastern District of Virginia. It may be that technology in time may provide less burdensome alternatives. District courts always have the power to quash subpoenas as posing an "undue burden," but litigation over burdensomeness is not inconsequential and imposes a burden in its own right upon trademark applicants. *See* Fed. R. Civ. P. 45. If Congress had struck a balance that imposed these costs upon foreign companies with de minimis United States contacts, that would be one thing, but for courts to impose these burdens based upon a foreign company's minimal contacts here reads a statute that is at best ambiguous in a manner that impinges on other nations' interests and risks at least a measure of international discord.

### B.

The majority's disregard for these cautionary canons of construction invites retaliatory actions of all sorts. The Supreme Court has sought to avoid applications of U.S. statutes to foreign companies or conduct that could generate "retaliatory action from other nations," *McCulloch*, 372 U.S. at 21, and "disrupti[on] of international commerce," *Romero*, 358 U.S. at 384. Yet the new burden that the majority places upon foreign companies to give in-person depositions in our country simply because they filed for registration of their trademark — a burden that so far as I can tell has never before been imposed by any court under § 24 — risks just such retributive measures. It is simply unrealistic to suppose that other nations will sit quietly while their own companies and citizens are subjected to depositions in this country. It is thoroughly realistic to anticipate their imposing corresponding burdens and inconveniences upon Americans who seek trademark protection for their own activities abroad.

Congress has indicated that trademark protection is vital to commerce since it first made actionable "the deceptive and misleading use of marks" based upon the harms that such abuses cause to interstate commerce. 15 U.S.C. § 1127 (2000). It declared that the trademark system sought "to protect persons engaged in such commerce against

unfair competition" that would ensue if one company could use another's name, logo, or other mark to benefit from the other's good will and sow confusion among consumers. *Id.* Foreign companies are no less dependent upon the protection of their products and properties for their commercial activities. The imposition of new burdens upon foreign companies, when they take no more than the first perfunctory step to register their trademark here, undermines a predicate of international commerce that a more modest conception of the judicial function would avoid.

The majority also fails to inquire as to "the degree to which the desirability of such regulation [subpoena authority] is generally accepted" and "the extent to which the regulation is consistent with the traditions of the international system," as well as "the character of the activity to be regulated." *Rest. (Third) Foreign Rels. Law* § 403(2)(c), § 403(2)(f). The majority does not ask whether, in authorizing subpoenas of foreign witnesses to the Eastern District of Virginia for in-person depositions, it is rebuking a consensus surrounding reciprocal reductions in barriers to the protection of intellectual property. Under the Madrid Protocol Relating to the Madrid Agreement Concerning International Registration of Marks, which the United States joined in 2003, an increasing number of nations permit the citizens of signatory states to seek trademark protection through a single transnational application, without filing new papers from country to country.[2] This agreement does not by any means decide the issue, but the reciprocal actions of these signatory nations suggest no basis in trademark law for the procedural hurdle that the majority today erects. And insofar as the Protocol indicates that a norm of reciprocity carries weight in this arena, other states could well consider my colleagues' imposition of this novel procedural hurdle upon their companies to be an invitation to impose corresponding retaliatory hurdles of their own.

Nor can the majority claim a basis for its decision by asserting that there is a need for in-person testimony in cases where a trademark

---

[2]Signatory nations retain the right to refuse applications filed through this mechanism, and United States law provides for the filing of oppositions such as VEL's to applications submitted in this manner. *See* 15 U.S.C. § 1141h(a)(2); *see also* J. Thomas McCarthy, *3 McCarthy on Trademarks and Unfair Competition* § 19:31.50 (4th ed. 2007).

holder claims that a foreign company has made or sold goods here that infringe an existing mark. Section 24, which applies only to PTO proceedings, does not in any way diminish the ability of trademark holders to bring infringement actions in federal court against companies that — unlike Rosenruist — distribute potentially infringing goods or conduct operations here. *See Steele v. Bulova Watch Co.*, 344 U.S. 280, 286-27 (1952). Section 24 does not bear upon the availability of in-person testimony in such infringement cases, because § 24 governs only PTO proceedings. *See* 35 U.S.C. § 24. A proper view of § 24 would do no more than protect companies such as Rosenruist that have taken only the first step to register their marks from the burdens of in-person depositions in cases before the PTO — burdens that can be adjusted by Congress as the exigencies of commerce and international trade require.

## C.

Separation of powers considerations are present also. I recognize that the statute at issue here is one that regulates judicial process, an issue on which courts rightly claim an expertise. That does not change the equation, however. Congress regulates judicial process through rules and statutes too numerous to mention. None of this regulation affords courts the authority to displace congressional enactments on judicial process with their own. Notwithstanding the fact that 35 U.S.C. § 24 bears upon judicial process, the impact of in-person depositions of foreign companies in the Eastern District of Virginia is quite beyond the ken of judges. Courts have recognized consistently that we should act cautiously where foreign relations are in play, because other branches of government are best suited to make judgments in these areas. For instance, extraterritorial application of federal law has long been disfavored in part because "such a construction would have had foreign policy implications." *Weinberger v. Rossi*, 456 U.S. 25, 32 (1982). And a narrow construction of the National Labor Relations Act has been justified where "international implications" would ensue from a broad one. *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 500 (1979). It is essential to recognize the international ramifications that may ensue from far-reaching holdings such as this one, and to defer to the political branches, as the Supreme Court has long done, in a matter of some international delicacy.

Other statutes in fact suggest the judgment of my fine colleagues is not in line with the judgment of Congress. As noted earlier, the majority's decision seems in some tension with the Madrid Protocol's scheme of reciprocal reduction in barriers to intellectual property protections abroad. In addition, 28 U.S.C. § 1783 authorizes subpoenas of an *American* citizen or resident "who is in a foreign country" only upon a showing "that particular testimony or the production of the document or other thing by him is necessary in the interest of justice" and, in civil cases, "that it is not possible to obtain his testimony in admissible form without his personal appearance or to obtain the production of the document or thing in any other manner." 28 U.S.C. § 1783(a) (2000). The high standard Congress has imposed upon litigants seeking to put even our own citizens to the expense and inconvenience of international travel to give a deposition here suggests that this court's unwarranted extension of subpoena powers is not just a judgment that should be left to Congress but a judgment that is out-of-step with Congress' approach.

III.

My friends in the majority not only make a policy decision that should be left to Congress, but also disregard the views of the most relevant expert agency in doing so. My colleagues disregard the limited view of the Patent and Trademark Office for whose sole benefit testimony under § 24 is intended, and authorize litigants to circumvent the framework that the PTO has established for obtaining testimony from foreign witnesses. This is unsound, both because of the PTO's expertise in trademark matters and because the text of § 24 indicates that it should be invoked only in aid of PTO proceedings — "for use in any contested case in the Patent and Trademark Office." 35 U.S.C. § 24.

A.

The Trademark Trial and Appeal Board's view that § 24 excludes foreign companies with minimal American contacts is evident from the record. The TTAB attorney overseeing the instant dispute denied VEL's motion to compel Rosenruist to appear for an oral testimony deposition in its home country of Portugal, in a letter that indicated there was no ready mechanism for obtaining in-person depositions

from foreign adverse parties. In particular, the attorney wrote, "where the adverse party or unwilling witness *resides in a foreign country*, the party seeking to take the testimony deposition of such witness *may not be able to do so absent the letter rogatory procedure or The Hague Convention letter of request procedure*." (emphasis added).

The TTAB attorney relied upon the TTAB Manual, which likewise indicates that foreign companies like Rosenruist are not generally subject to compulsion under § 24 because they are not "residing or being" in any district of the United States. The manual's provisions on domestic and foreign witnesses present a striking contrast. The manual first indicates that parties to a PTO proceeding may use § 24 to subpoena domestic witnesses in the judicial districts where they reside or are employed. It provides,

> If a party wishes to take the trial testimony of an adverse party or nonparty (or an official or employee of an adverse party or nonparty) residing in the United States, and the proposed witness is not willing to appear voluntarily to testify, the party wishing to take the testimony must secure the attendance of the witness by subpoena.

TTAB Manual § 703.01(f)(2). The subpoena "must be issued, pursuant to 35 U.S.C. § 24 and Fed. R. Civ. P. 45, from the United States district court in the Federal judicial district where the witness *resides or is regularly employed*." *Id.* (emphasis added).

The immediately subsequent provision entitled "Unwilling witness residing in a foreign country," describes no role for § 24 with respect to such witnesses. It states, to the contrary,

> There is *no certain procedure* for obtaining, in a Board inter partes proceeding, the trial testimony deposition of a witness who resides in a foreign country, is an adverse party or a nonparty (or an official or employee of an adverse party or nonparty), and is not willing to appear voluntarily to testify.

TTAB Manual § 703.01(f)(3) (emphasis added); *see also* TTAB Manual § 703.01(f)(1) ("[W]here a party wishes to take the testimony of

an adverse party or nonparty, or an official or employee of an adverse party or nonparty, and the proposed witness is not willing to appear voluntarily to testify . . . the party that wishes to obtain the deposition must take steps, discussed below, to compel the attendance of a witness. *If the witness resides in a foreign country, the party may not be able to take the deposition.*") (emphasis added).

The regulations governing PTO proceedings, while less explicit, fully support the TTAB Manual and the TTAB hearing officer in concluding that a party cannot demand in-person oral testimony from a foreign party such as Rosenruist simply because the foreign party filed a trademark application. The regulations make no mention of subpoenaing foreign witnesses under § 24 for testimony or discovery depositions,[3] but they *do* describe § 24 as available to compel discovery depositions from persons who "live or reside" in the United States — indicating again that the agency construed § 24 as applicable only to witnesses that "live or reside" in the country. *Compare* 37 C.F.R. § 2.120(b) (2006) (stating that the discovery "deposition of a natural person shall be taken in the federal judicial district where the person *resides or is regularly employed* or at any place on which the parties agree by stipulation") (emphasis added) *with* 37 C.F.R. § 2.120(c) (providing for discovery depositions of representatives of foreign witnesses abroad on written questions unless the TTAB orders oral deposition on motion for good cause).[4] These provisions are simply

---

[3]PTO proceedings have a discovery phase, in which discovery depositions are permitted, and a trial phase, in which testimony depositions are permitted, subject to somewhat more restrictive evidentiary and other limitations. *See* TTAB Manual § 404.09 (setting forth the "most significant" differences between discovery and testimony depositions, including, for example, that the content of testimony depositions is limited to evidence admissible under applicable rules of evidence; that every testimony deposition must be filed and when filed, becomes part of the record; and that testimony depositions, if not obtained voluntarily, may be taken only pursuant to a subpoena issued by a United States district court); Gary D. Krugman, *Tips From the TTAB: Testimony Depositions*, 70 Trademark Rep. 353 (1980).

[4]Although my colleagues in the majority are correct that the provisions contained in 37 C.F.R. § 2.120 pertain to discovery depositions, *see ante* at 16 n.6, they are incorrect that such provisions are unrelated to the

incompatible with VEL's view that foreign trademark applicants can *always* be compelled to give in-person depositions in contested PTO cases, so long as they are subpoenaed in the Eastern District of Virginia. They indicate, to the contrary, that because § 24 authorizes the compulsion of witnesses only in judicial districts where they are "residing or being," foreign companies with de minimis ties to our country are outside the statute's scope because they are not "residing or being" in the United States.

In addition, the TTAB has elaborate provisions that allow litigants to take the testimony of foreign adverse parties or other witnesses through mechanisms other than in-person deposition testimony, which would make little sense if such parties could simply be called to give oral deposition testimony in the United States. Litigants may take foreign witnesses' depositions through the letter rogatory procedure and Hague Convention letter of request procedure, *see* TTAB Manual § 703.01(f)(3); *id.* § 404.03(c)(2), and may take depositions upon written questions without regard to a witness's or party's country of origin, *see* 37 C.F.R. § 2.124; *id.* § 2.123. Perhaps most critically, the regulations establish a presumption in favor of written depositions by foreign witnesses in foreign countries over oral depositions abroad. They provide, "A testimonial deposition taken in a foreign country shall be taken by deposition upon written questions . . . unless the

---

PTO's procedures for conducting testimony depositions. While differences between testimony and discovery depositions in fact exist, none of the differences pertain to the question of whether a foreign party may be compelled to provide in-person oral testimony in the United States. *See supra* at 32 n.3 (citing TTAB § 404.09 "Discovery Depositions Compared to Testimony Depositions"). In fact, the TTAB manual — in setting forth the requirement that testimony depositions, unless "obtained voluntarily," can only be taken pursuant to a subpoena issued by a United States district court — directly references 37 C.F.R. § 2.120(b), which is instructive on the issue of securing the attendance of a natural person for a deposition in the United States. *See* TTAB Manual § 404.09 & n.114. Moreover, the explicit references in 37 C.F.R. § 2.120 to discovery depositions do not dilute the fact that the PTO took seriously Congress's limitation in 35 U.S.C. § 24 that oral depositions can be taken only from witnesses that "live or reside" in the United States.

Board, upon motion for good cause, orders that the deposition be taken by oral examination, or the parties so stipulate." *Id.* § 2.123(2).

It is hard to imagine that the TTAB would have made it so difficult to subpoena foreign parties for oral depositions in their home countries, if it viewed § 24 as permitting parties to require such witnesses to travel to the United States to give such depositions. In sum, like the TTAB Manual and the TTAB ruling in this case, the PTO's framework of regulations suggests that the agency whose expertise in trademark disputes is entitled to respect viewed foreign companies with very limited American contacts as beyond the reach of adverse parties under § 24.

### B.

Congress has provided that the PTO "shall be responsible for the granting and issuing of patents and the registration of trademarks" and "may establish regulations, not inconsistent with law" that "shall govern the conduct of proceedings in the Office." 35 U.S.C. § 2 (2000). We have therefore noted that TTAB decisions interpreting the extent of intellectual property protections under the Lanham Act are entitled to "great weight." *Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Etrangers a Monaco*, 329 F.3d 359, 378 (4th Cir. 2003); *see also In re Dr. Pepper Co.*, 836 F.2d 508, 510 (Fed. Cir. 1987) ("While the interpretations of the statute by the board are not binding on this court, under general principles of administrative law, deference should be given by a court to the interpretation by the agency charged with its administration.").

A number of our sister circuits have noted the perils of simply disregarding the PTO's view in construing other aspects of § 24's scope. Those circuits have placed especial emphasis upon § 24's authorization of in-person depositions only when the "testimony *is to be taken for use in any contested case in the Patent and Trademark Office*." 35 U.S.C. § 24 (emphasis added). The First, Third, and Fifth Circuits have thus held that § 24 authorizes district courts to issue subpoenas for discovery materials only when the PTO's rules also authorized the parties to obtain the materials in question. *See Brown v. Braddick*, 595 F.2d 961, 966 (5th Cir. 1979); *Sheehan v. Doyle*, 529 F.2d 38, 39 (1st Cir. 1976) ("*Doyle II*"); *Sheehan v. Doyle*, 513 F.2d 895 (1st Cir.

1975) ("*Doyle I*"); *Frilette v. Kimberlin*, 508 F.2d 205 (3d Cir. 1974) (en banc). *But see Natta v. Hogan*, 392 F.2d 686, 690 (10th Cir. 1968) (suggesting § 24 authorizes district courts to issue subpoenas without regard to limitations in PTO's rules).

The First Circuit explained based upon § 24's text and structure that the statute "is simply a provision giving teeth, through the courts' subpoena powers, to authority conferred upon the Commissioner of Patents." *Doyle I*, 513 F.2d at 898. It "provided for judicial subpoenas to be used in aid of contested Patent Office cases (including for purposes of broad-based Federal Rules of discovery) but only to the extent permitted by the Commissioner of Patents," who heads the PTO. *Doyle II*, 529 F.2d at 39. "What we rejected," the First Circuit concluded, "was the use of the federal district courts 'as alternative forums of first resort rather than as forums acting strictly in aid of a primary proceeding.'" *Id.* (quoting *Doyle I*, 513 F.2d at 899).

VEL's view suffers the problems identified by the First, Third, and Fifth Circuits. While § 24's authorization of subpoenas only for testimony "to be taken for use in any contested case in the Patent and Trademark Office" led those circuits to reject use of § 24 to obtain evidence the PTO does not authorize, VEL glosses over this limitation entirely. This enables disruptions of PTO proceedings that our sister circuits explained would be incompatible with the statute's design as an aid to PTO proceedings. In particular, because of the majority's decision, PTO litigants can now routinely seek to stay the agency's proceedings, as VEL has done here, and then go before a district court and get evidence not provided for under the PTO's own rules. *See Frillette*, 508 F.2d at 210. This divorces the subpoena authority from "the rudder that the court or agency which should have control over the case can provide," *id.* at 211, and permits evasion of the PTO's framework for obtaining evidence in its own cases. The majority's disregard for the PTO's ruling in this case, the TTAB Manual, and the structure set forth in PTO regulations not only ignores the expertise of the agency most familiar with the statute before us, but also does violence to the statute's role — established by its text — as an aid to PTO proceedings.

## IV.

In concluding without explanation that foreign companies with the most minimal U.S. contacts ought to be subject to compulsory in-

person depositions in PTO cases, the majority overlooks the guide-posts — including the very statute governing this situation — that should control its decision. It disregards the statutory text limiting such compulsion to entities "residing or being" within a United States judicial district. It ignores numerous canons of construction relevant to the statute's foreign reach. It disregards the evident expert view of the PTO whose proceedings § 24 is intended to aid.

I fear the result is not simply one that Congress did not intend, but one that could in time negatively impact not only the operations of the PTO, but also international trade and foreign relations. Since a statute that authorizes compulsory depositions only of entities "residing or being" within a judicial district does not clearly reach foreign companies that have done nothing more than file an application for trademark registration, I would heed the Supreme Court's cautionary words: "[f]or us to run interference in such a delicate field of international relations there must be present the affirmative intention of the Congress clearly expressed." *Benz v. Compania Naviera Hidalgo, S.A.*, 353 U.S. 138, 147 (1957). The "affirmative intention" of the Congress is affirmatively at odds with the result reached here. I respectfully dissent.